Englebert v. Troxell.

FRANCIS LEON ENGLEBERT, APPELLEE, V. BENJAMIN F. TROXELL ET AL., APPELLANTS.

FILED APRIL 17, 1894.    No. 5165.

1. Infants: CONTRACTS. All contracts of an infant, except those for necessaries, are voidable by him at his election, made within a reasonable time after he becomes of age.

2. Ratification: DISAFFIRMANCE: CONTRACTS OF INFANTS. The validity of a contract made by an infant does not depend upon a ratification thereof by him after his minority ends, but to invalidate such contract he must by some act, clear and unmistakable in its character, disaffirm the same.

3. Infants: ACTION TO CANCEL DEED: DISAFFIRMANCE. The bringing of a suit in equity by a party to cancel a deed made by him when a minor, and on that ground, is an unequivocal and sufficient disaffirmance of such deed.

4. ——: TIME TO DISAFFIRM CONTRACT. What is a reasonable time for one after becoming of age to disaffirm a contract made by him during his minority is a mixed question of law and fact to be determined from the circumstances in each particular case.

5. The meaning of the term "necessaries" cannot be defined by a general rule applicable to all cases; the question is a mixed one of law and fact to be determined in each case from the particular facts and circumstances in such case.

6. **Infancy:** Services of Guardian Ad Litem Not Necessaries. Under the evidence in this case, *held*, that services performed by the guardian *ad litem* of an infant in defending a suit brought to foreclose a real estate mortgage executed by the infant's ancestor were not necessaries.

7. ———: Disaffirmance of Contract: Return of Consideration. One who seeks to disaffirm a contract on the ground that he was an infant at the time of its execution is required to return so much of the consideration received by him as remains in his possession at the time of such election, but is not required to return an equivalent for such part thereof as may have been disposed of by him during his minority. *Bloomer v. Nolan*, 36 Neb., 51, followed.

8. ———: ———: ———. An infant conveyed his real estate to one P. in consideration of $240 in cash paid by P. to the infant's father. The father purchased a piano for the infant with the money. The infant, on coming of age, had in his possession the piano, and disaffirmed the deed. *Held*, That the *quondam* infant, as a condition precedent to his right to disaffirm the deed, was under no legal obligation to tender or surrender the piano to P., nor repay P. the money which he had paid the infant's father.

9. **A deed made by an infant to his guardian ad litem,** in consideration of services rendered or to be rendered by him as such guardian *ad litem*, is voidable at the election of such infant on his becoming of age.

10. **Infancy:** Fees of Guardian Ad Litem. The statute makes it the duty of an attorney at law to act as the guardian *ad litem* of an infant in any suit pending against him when appointed for that purpose by an order of the court; and for performing the duties of a guardian *ad litem*, the attorney must look, and look only, for the amount of his compensation to the court. The compensation allowed the attorney as guardian should be taxed as part of the costs in the proceeding and collected as such, and no other different or greater amount can be collected than that so allowed.

APPEAL from the district court of Douglas county. Heard below before DAVIS, J.

The facts are stated by the commissioner.

*George E. Pritchett,* appellant, contending that the con-

tract was beneficial to the infant and should be sustained, cited: *Breed v. Judd*, 1 Gray [Mass.], 455; *Baker v. Lovett*, 6 Mass., 78; *Wheaton v. East*, 5 Yerg. [Tenn.], 41; *Radford v. Westcott*, 1 Desau. [S. Car.], 596.

In some cases it has been held that services of counsel for an infant in regard to his estate are necessaries. (*Epperson v. Nugent*, 57 Miss., 45; *Thrall v. Wright*, 38 Vt., 494; *Askey v. Williams*, 74 Tex., 294.)

The first deed was an executed contract, and the plaintiff still retains the consideration given him for it, to-wit, my services.    All the cases hold that the infant cannot disaffirm the contract and retain the consideration if he still has it. (*Bartholomew v. Finnemore*, 17 Barb. [N. Y.], 428; *Gray v. Lessington*, 2 Bos. [N. Y.], 257; *Ex parte Taylor*, 8 De. G., M. & G. [Eng.], 254*, *Holmes v. Blogg*, 8 Taunt. [Eng.], 508; 1 Parsons, Contracts [5th ed.], 322; *Kitchen v. Lee*, 11 Paige Ch. [N. Y.], 108; *Ottman v. Moak*, 3 Sand. Ch. [N. Y.], 432.)

*Switzler & McIntosh*, for appellant Troxell:

To avoid his executed contracts an infant must restore the consideration received by him. (*Badger v. Phinney*, 15 Mass., 359; *Roberts v. Wiggin*, 1 N. H., 73; *Roof v. Stafford*, 7 Cow. [N. Y.], 179; *Hamblett v. Hamblett*, 6 N. H., 339; *Smith v. Evans*, 5 Humph. [Tenn.], 70; *Hall v. Butterfield*, 59 N. H., 358; *Bryant v. Pottinger*, 6 Bush [Ky.], 473; *Cummings v. Powell*, 8 Tex., 82; *Bozeman v. Browning*, 31 Ark., 364; *Ferguson v. Bobo*, 54 Miss., 133; *Gray v. Lessington*, 2 Bos. [N. Y.], 257; *Hanley v. Carroll*, 3 Sand. Ch. [N. Y.], 331; *Kilgore v. Jordan*, 17 Tex., 355; *Stuart v. Baker*, 17 Tex., 421; *Kerr v. Bell*, 44 Mo., 125; *Deichmann v. Deichmann*, 49 Mo., 107; *Baker v. Kennett*, 54 Mo., 88; *Davidson v. Young*, 38 Ill., 146; *Judd v. Blake*, 14 Vt., 410; *Bailey v. Barnberger*, 11 B. Mon. [Ky.], 113; *Locke v. Smith*, 41 N. H., 346; *Prout v. Wiley*, 28 Mich., 168; *Middleton v. Hoge*, 5 Bush [Ky.], 478; *Strain v.*

Englebert v. Troxell.

*Wright,* 7 Ga., 568; *City Savings Bank v. Whittle,* 63 N. H., 587; *Ex parte Watson,* 16 Ves. [Eng.], 265.)

Having issued his deeds in manner and form as appears in proof, the plaintiff is in equity estopped to avoid them as against innocent purchasers. (*Ferguson v. Bobo,* 54 Miss., 133; Bigelow, Estoppel, pp. 584–586; *Overton v. Banister,* 3 Hare [Eng.], 503, *Esron v. Nicholas,* 1 De G. & Sm. ❋ [Eng.], 118; *Hall v. Timmons,* 2 Rich. Eq. [S. Car.], 120; *Whittington v. Wright,* 9 Ga., 23; *Irwin v. Morill,* Dud. [Ga.], 72; *Thompson v. Simpson,* 2 Jones & L. [Irish], 110; *Brantley v. Wolf,* 60 Miss., 420; *Stikeman v. Dawson,* 1 De G. & Sm. [Eng.], 90; *Wright v. Snowe,* 2 De G. & Sm. [Eng.], 321; *Ex parte Unity Joint-Stock Mutual Banking Association,* 3 De G. & J. [Eng.], 63; *Western Union Telegraph Co. v. Davenport,* 97 U. S., 369; *Goodman v. Winter,* 64 Ala., 410; *Merritt v. Horne,* 5 O. St., 307; *Commonwealth v. Shuman's Adm'rs,* 18 Pa. St., 343; *Pickard v. Sears,* 6 Ad. & E. [Eng.], 469; *Gregg v. Wells,* 10 Ad. & E. [Eng.], 90; *Griffin v. Ransdell,* 71 Ind., 440; *Lichtenberger v. Graham,* 50 Ind., 288.)

*Charles Offutt* and *St. John & Stevenson, contra,* cited,

On the question as to the effect of the deeds to Pritchett: *Kleffel v. Bullock,* 8 Neb., 341; *Tucker v. Moreland,* 10 Pet. [U. S.], 59; *Roof v. Stafford,* 7 Cow. [N. Y.], 179; *Beeler v. Young,* 1 Bibb [Ky.], 519; *McCrillis v. How,* 3 N. H., 348; *McMinn v. Richmonds,* 6 Yerg. [Tenn.], 9; *Bouchell v. Clary,* 3 Brev. (S. Car.], *194; *Swasey v. Administrator of Vanderheyden,* 10 Johns. [N. Y.], 33; *Fenton v. White,* 1 South. [N. J.], 111; *Hanks v. Deal,* 3 McCord [S. Car.], 158; *Earle v. Reed,* 10 Met. [Mass.], 387; *Tupper v. Cadwell,* 12 Met. [Mass.], 559; *Bainbridge v. Pickering,* 2 W. Black [Eng ], 1325; *Angel v. McLellan,* 16 Mass., 31; *Elrod v. Myers,* 2 Head [Tenn.], 33; *Hull v. Connolly,* 3 McCord [S. Car.], 6; *Philpot v. Sandwich Mfg. Co.,* 18 Neb., 55; *Keane v. Boycott,* 2 H. Black

[Eng.], 511; *Uecker v. Koehn*, 21 Neb., 570; *Zouch v. Parsons*, 3 Burr. S. C. [Eng.], 1794; *Oliver v. Houdlet*, 13 Mass., 237; *Swafford v. Ferguson*, 3 Lea [Tenn.], 292; *Robinson v. Weeks*, 56 Me., 102; *Fridge v. State*, 3 Gill & J. [Md.], 103; *Van Etten v. Butt*, 32 Neb., 289; *Cole v. Superior Court*, 63 Cal., 86; *Gallatian v. Cunningham*, 8 Cow. [N. Y.], 371; *Hendee v. Cleveland*, 54 Vt., 142; *Davoue v. Fanning*, 2 Johns. Ch. [N. Y.], 252.

On the right and method of disaffirming voidable conveyances of real estate: *O'Brien v. Gaslin*, 20 Neb., 350; *Tucker v. Moreland*, 10 Pet. [U. S.], 71; *Jackson v. Carpenter*, 11 Johns. [N. Y.], 539; *Jackson v. Burchin*, 14 Johns. [N. Y.], 124; *Hastings v. Dollarhide*, 24 Cal., 195; *Roof v. Stafford*, 7 Cow. [N. Y.], 179.

The return or tender of consideration received is not a condition precedent to recovery. (*Shaw v. Boyd*, 5 S. R. [Pa.], 309; *Cresinger v. Lessee of Welch*, 15 O., 194; *Dawson v. Holmes*, 15 N. W. Rep. [Minn.], 463; *Chandler v. Simmons*, 97 Mass., 514; *Price v. Furman*, 27 Vt., 271; *Mustard v. Wohlford*, 15 Gratt. [Va.], 329; *Fitts v. Hall*, 9 N. H., 441; *Robbins v. Eaton*, 10 N. H., 562; *Boody v. McKinney*, 23 Me., 517; *Brawner v. Franklin*, 4 Gill [Md.], 463.)

The acts of the guardian in taking the deed and paying the money were a breach of duty and the infant is not bound to repay the purchase money to him. (*Fonda v. Van Horne*, 15 Wend. [N. Y.], 631; *Green v. Winter*, 1 Johns. Ch. [N. Y.], 27; *Parkist v. Alexander*, 1 Johns. Ch. [N. Y.], 394; *Evertson v. Tappen*, 5 Johns. Ch. [N. Y.], 497; *Hawley v. Mancius*, 7 Johns. Ch. [N. Y.], 174; *Schieffelin v. Stewart*, 1 Johns. Ch. [N. Y.], 620; *Brown v. Rickets*, 4 Johns. Ch. [N. Y.], 303; *Torrey v. Bank of Orleans*, 9 Paige Ch. [N. Y.], 659; *Hassard v. Rowe*, 11 Barb. [N. Y.], 22; *Putnam v. Ritchie*, 6 Paige Ch. [N. Y.], 390.)

The infant has not confirmed the deeds. (1 Story, Eq. Jurisprudence, secs. 317, 319; *Tucker v. Moreland*, 10 Pet. [U. S.], 71.)

RAGAN, C.

On April 1, 1874, Mrs. Frances H. Englebert was the owner of lot 3 in Geise's addition to the city of Omaha. At that time she and her husband, J. Lee Englebert, executed a mortgage on said lot to Max Meyer & Bro. to secure a note of $378.48, due July 1, 1874. Soon after that time Mrs. Englebert and her husband removed to Des Moines, Iowa, in which city Mrs. Englebert died on the 29th of December, 1875. She died intestate, leaving her husband and one child, the appellee herein, then a boy about seven years of age. November 1, 1881, Max Meyer & Bro. brought suit in the district court of Douglas county against Mr. and Mrs. Englebert only, to foreclose the mortgage above mentioned, and obtained service upon them by publication, Max Meyer & Bro. being then ignorant of the fact of Mrs. Englebert's death.

December 17, 1881, George E. Pritchett, an attorney at law, residing at Omaha, Nebraska, informed Mr. Englebert by letter of the pendency against him and his wife of Max Meyer & Bro.'s mortgage foreclosure suit, and requested to be authorized to appear in and defend the same. Various communications took place immediately afterwards between Pritchett and Mr. Englebert, finally culminating in an agreement between them that Pritchett should defend the foreclosure suit for Englebert and his minor son, and receive as compensation for his services one-half of whatever of the lot he might succeed in saving from the lien of the Max Meyer & Bro. mortgage. In pursuance of this agreement, on the 4th day of August, 1885, Mr. Englebert and his minor son conveyed to Pritchett, subject to the Max Meyer & Bro. mortgage, an undivided one-half of the aforesaid lot. Pritchett seems to have succeeded in having the foreclosure suit, as brought, continued from time to time on one pretext or another until August, 1884.

In August, 1885, Max Meyer & Bro. filed an amended

petition in their foreclosure suit, making Francis Leon Englebert, the minor son of Mr. and Mrs. Englebert, a party defendant to the action. Pritchett filed an answer on behalf of Mr. Engelbert to this amended petition, and having been by the court appointed guardian *ad litem* for Francis Leon Englebert, also filed an answer in the action for him. These answers admitted the execution and delivery of the note and mortgage described in the foreclosure suit; alleged that the legal title to the property was at the time of the execution of the mortgage in Mrs. Englebert; her death, and that the legal title to the real estate had descended to and was then vested in the minor son, Francis Leon Englebert; that the only interest that Mr. Englebert had in the property mortgaged was a life estate as tenant by the curtesy of his deceased wife; and that the interest of the minor, Francis Leon Englebert, in the real estate could not be sold to satisfy the mortgage debt, because the action as against him was not brought within ten years from the date of the maturity of the note which the mortgage was given to secure. The court rendered a decree and ordered the life estate only of Mr. Englebert sold to satisfy the amount found due on the mortgage. This life estate was sold under a decree; the property purchased by one of the plaintiffs in the foreclosure suit, and the sale confirmed; a deed was ordered but never made to the purchaser.

On the 6th day of January, 1886, on the joint application of Mr. Englebert and his minor son, Mr. Pritchett was appointed guardian of the minor son by the county court of Douglas county; accepted the trust, and qualified therefor by taking the oath and giving bond as required by statute.

On June 1, 1886, in pursuance of an agreement between Mr. Pritchett and Mr. Englebert, his son, then being about eighteen years of age, and in consideration of $240 in cash then paid by Pritchett to Englebert, conveyed to Pritchett the undivided one-half of the lot.

On the 22d day of December, 1888, J. Lee Englebert died. On the 11th of October, 1889, Francis Leon Englebert became of age, and one month and three days thereafter, to-wit, on the 14th day of November, 1889, brought this suit in equity in the district court of Douglas county, against the said George E. Pritchett and others who were claiming to be owners of some part of said lot under conveyances from Pritchett, to cancel and set aside the deeds hereinbefore mentioned made by himself and father to Pritchett, alleging that at the time he executed said deeds he was seized in fee-simple of the property and was a minor.

The district court rendered a decree canceling and setting aside said deeds and awarding the plaintiff a writ of possession for said real estate. The case is before us on appeal.

The reported decisions, especially the older ones, abound with grave, learned, and lengthy discussions of the question as to whether the contracts of an infant are void or voidable; and there are respectable authorities which hold that certain contracts of an infant, made under certain circumstances, are absolutely void; but we think that the better rule, and the one supported by the weight of authority, is that all contracts of an infant, except those for necessaries, are voidable by the infant at his election within a reasonable time after he becomes of age. In *Tunison v. Chamblin*, 88 Ill., 378, the rule is thus stated: "Deeds made by a minor are not void, but only voidable. Their validity does not depend upon a ratification after the minor attains his majority, but to avoid them he must by some act, clear and unmistakable in its character, disaffirm their validity." (See, also, *Bonner v. Illinois Land & Loan Co.*, 75 Ill., 315; *Hyer v. Hyatt*, 3 Cranch C. C., 276; *Kendall v. Lawrence*, 39 Mass., 540; *Dixon v. Merritt*, 21 Minn., 196; *Singer Mfg. Co. v. Lamb*, 81 Mo., 221; *Irvine v. Irvine*, 76 U. S., 617; Pom., Eq. Juris. [2d ed.], sec. 945.) Such is

also the doctrine of this court as stated in *Philpot v. Sandwich Mfg. Co.*, 18 Neb., 54, where it is said: "Contracts of an infant, other than for necessaries, are voidable only, and upon coming of age he may affirm or avoid in his discretion." The deeds made by the appellee in this case to Pritchett were voidable and not void. The appellee, within less than two months after his becoming of age, instituted this suit for the purpose of canceling the deeds made to Pritchett. This was, on the part of the appellee, an unequivocal and sufficient disaffirmance on his part of the contracts made. (*Tunison v. Chamblin*, 88 Ill., *supra;* *Sims v. Everhardt*, 102 U. S., 300.)

Was the disaffirmance of these deeds by appellee made within a reasonable time? As to what is a reasonable time for an infant after becoming of age to disaffirm contracts, made during his minority is a mixed question of law and fact to be determined from the circumstances in each particular case. In *Ward v. Laverty*, 19 Neb., 429, this court said: "A minor who has conveyed his real estate must disaffirm the deed within a reasonable time after becoming of age or be barred of that right." In that case the disaffirmance was not made until more than three years after the minor became of age, and the court held that the disaffirmance under the facts in the case was not made within a reasonable time. In *O'Brien v. Gaslin*, 20 Neb., 347, this court, adhering to the rule announced in *Ward v. Laverty*, held that a disaffirmance made by a party fourteen years after he became of age was not made within a reasonable time. In *Johnson v. Storie*, 32 Neb., 610, an infant who had signed a note as surety disaffirmed the same a year and a half after he became of age, and it was held that the disaffirmance was made within a reasonable time. There are some eminent authorities which hold that an infant may disaffirm a deed which he has made to his real estate during his minority at any time after he becomes of age before he would be barred by the statute of limitations from bringing

an action in ejectment for the real estate; but this is not
the doctrine of this court. It is now firmly settled here
that an infant, in order to avoid a contract made during his
minority, must disaffirm the same within a reasonable time
after his minority ends. There can be no doubt, in view
of the authorities quoted above, but that the appellee dis-
affirmed within a reasonable time after he became of age
the deeds made to Pritchett.

It is insisted by the appellants that the first deed made
by appellee to Pritchett was voidable only, and that the
services performed by Pritchett in the foreclosure suit of
Max Meyer & Bro. for the appellee were necessaries, and
that therefore the appellee cannot avoid said first deed.
Were the services performed by Pritchett for the appellee
in the foreclosure suit " necessaries" within the meaning of
that term? As to what are necessaries for an infant, can-
not be defined by any general rule applicable to all cases;
it is a mixed question of law and fact to be determined in
each case from the particular facts, circumstances, and sur-
roundings in that case. In *Shelton v. Pendleton*, 18 Conn.,
417, a wife, without her husband's consent, employed an
attorney to prosecute a suit for divorce in her favor against
her husband for a legal and sufficient cause. The attorney
performed the services and the decree of divorce was
granted. The attorney then sued both the husband and
wife for his fees. The court held that the services rendered
were not necessaries and that the husband was not liable
therefor. The court said: "By the law the defendant is
liable only for necessaries which the plaintiffs have provided
for his wife. * * * The common law defines 'neces-
saries' to consist only of necessary food, drink, clothing,
washing, physic, instruction, and a competent place of
residence." In *Munson v. Washband*, 31 Conn., 303, a
female infant was seduced under a promise of marriage.
Her seducer refused to marry her and she was left in a
state of destitution. At her request an attorney brought

suit against the seducer for a breach of promise of marriage. The suit was settled by the intermarriage of the plaintiff and defendant. The attorney then sued both the husband and the wife for his services. The court held that the services rendered by the attorney, under the circumstances, were 'necessaries' within the meaning of that term. The court said: "Can the plaintiff's charges for prosecuting that action be considered as necessaries under the circumstances? The rule usually stated in the text-books confines the term 'necessaries,' for which a minor may bind himself, to suitable food, shelter, clothing, washing, medicine, medical attendance, and education. It is admitted that it depends entirely upon what a court or jury may think in each case suitable and proper in reference to the infant's condition and station in life. * * * The personal security of the wife, then, is legally a necessary, and the expense of securing it is a proper charge against the husband. * * * If we look at the prosecution of the suit which the infant commenced as her only mode under her peculiar circumstances of procuring the means of living, it comes within the principle allowing her to contract for necessaries. * * * It was not the case of merely prosecuting an infant's right to property or for the recovery of an ordinary debt. In such cases there is, or ought to be, a guardian to protect the infant's rights. There was none here, and it does not appear that there were any practicable means of procuring one to be appointed. * * * It appears to us, therefore, that while the court recognized the rule that the ordinary fees of an attorney for the prosecution of an infant's rights to property could not generally be said to be necessaries, it yet further correctly informed them in substance that such services, where requisite for the personal relief, protection, and support of the infant, might be lawfully contracted for by the infant, and that he would be liable to pay for the same." In *Wallace v. Bardwell*, 126 Mass., 366, it was held: "A ward is not liable for repairs

put upon his dwelling house by a person employed by the guardian to make them, even after the death of the guardian; and evidence that the repairs were necessary is immaterial." In *Tupper v. Cadwell*, 53 Mass., 559, it was held: "An infant is not liable for the expense of repairing his dwelling house on a contract made by him therefor, although such repairs were necessary for the prevention of immediate and serious injury to the house." The court said: "An infant may make a valid contract for necessaries, and the matter of doubt in the present case is what expenditures are embraced in the term 'necessaries.' * * * It has sometimes been contended that it was enough to charge the party, though a minor, that the contract was one plainly beneficial to him in a pecuniary point of view. That proposition is by no means true, if by it it be intended to sanction an inquiry in each particular case, whether the expenditure or articles contracted for were beneficial to the pecuniary interests of the minor. The expenditures are to be limited to cases where, from their very nature, expenditures for such purposes would be beneficial; or, in other words, they must belong to a class of expenditures which are in law termed beneficial to the infant. What subjects of expenditure are included in this class is a matter of law to be decided by the court. The further inquiry may often arise whether expenditures, though embraced in this class, were necessary and proper in the particular case, and this may present a question of fact. It is therefore a preliminary question to be settled whether the alleged liability arises from expenditures for what the law deems 'necessaries,' and unless that be shown it is not competent to introduce evidence to show that in a pecuniary point of view the expenditure was beneficial to the minor." (See, also, *Price v. Sanders*, 60 Ind., 310; *Mathes v. Dobschuetz*, 72 Ill., 438; *Bloomer v. Nolan*, 36 Neb., 51.) In *Turner v. Gaither*, 83 N. Car., 357, it was held that money furnished an infant to enable him to acquire a professional education

was not a necessary. In *Decell v. Lewenthal*, 57 Miss., 331, it was held that money furnished an infant to enable him to carry on a plantation was not a necessary. In *Barker v. Hibbard*, 54 N. H., 539, it was held that the services rendered by an attorney in defending an infant in a bastardy proceeding was a necessary. In *Anding v. Levy*, 57 Miss., 51, it was held that where an infant had no guardian, and the services rendered by an attorney were beneficial to the infant's estate, that he was liable for such services. In *Connolly v. Assignees of Hull*, 3 McCord [S. Car.], 6, and in *Kline v. L'Amoureux*, 2 Paige Ch. [N. Y.], 419, it was held that if an infant was living with his parents or guardian, and properly maintained by them, his contract even for necessaries was not binding. In the case at bar, when the appellee made the first deed to Pritchett, in consideration that he would defend the Max Meyer & Bro. mortgage foreclosure suit, he was living with his father, his natural guardian; so that if we held that the services rendered by Pritchett in the foreclosure suit were necessaries, still the appellee would not be bound to pay for the services if this was a suit by Pritchett on the contract made for that purpose. In the light of the authorities quoted above upon this subject, we are clearly of the opinion that the services rendered by Mr. Pritchett in the foreclosure suit cannot be considered necessaries under the facts of this case.

Another contention of the appellants is that the appellee has not restored the consideration he received from Pritchett for the execution of the two deeds which he seeks to cancel by this suit and therefore he cannot maintain this action. There are many authorities which hold that it is not necessary, to enable an infant on coming of age to disaffirm a contract made during his minority, to restore or return, or offer to restore or return, as a condition precedent to his right to disaffirm such contract, the consideration which he received therefor. But the rule of this court is otherwise. In *Philpot v. Sandwich Mfg. Co.*, 18 Neb., 54, the rule is

thus stated: "If an infant purchase personal property and give his note therefor, he cannot, upon arriving at the age of twenty-one years, retain the property and plead infancy as a defense to the note." This is a somewhat loose statement of the rule. The rule is concisely and correctly stated by Post, J., in *Bloomer v. Nolan*, 36 Neb., 51, in this language: "One who seeks to disaffirm a contract on the ground that he was an infant at the time of its execution is required to return so much of the consideration received by him as remains in his possession at the time of such election; but is not required to return an equivalent for such part thereof as may have been disposed of by him during his minority." That is to say, the infant, on coming of age and electing to disaffirm a contract made by him during his minority, must restore or return so much of the consideration received by him in consideration of executing the contract as he then has in specie in his possession. The language of the authorities is that he must return or restore whatever of the consideration he then has; not that he is to pay to the party with whom he made the contract an equivalent or that which he received from said party. In *Reynolds v. McCurry*, 100 Ill., 356, the rule is thus stated: "It is the general rule that where the consideration of a conveyance by an infant has been expended so that he is not in a condition to restore it, he may nevertheless avoid the conveyance. It is only when he still has the consideration that he will be compelled to return it." (See also *Miller v. Smith*, 26 Minn., 248.) In *Chandler v. Simmons*, 97 Mass., 508, the rule is stated in this language: "If money paid to a minor as the consideration for his conveyance of real estate has been wasted or spent by him during his minority, payment or tender of the amount is not necessary to enable him   *   *   *   to avoid the conveyance." The Iowa Code provides that a minor is bound by his contract unless he disaffirms it and restores to the other party all money or property received by him by virtue of his contract and re-

.maining within his control.   Construing this section of the
Code the supreme court of Iowa in *Hawes v. Burlington,
C. R. & N. R. Co.,* 64 Ia., 315, held that where a minor
had disaffirmed a contract he was only required to return
the identical money or property received by him for the
execution of such contract remaining in his possession at
the time of his disaffirmance thereof.   The court said: "It
is not shown or pretended that he had remaining under his
control at any time after attaining his majority any money
or property received by him by virtue of the contract, and
it is only such money or property as may thus remain that
he is bound to restore."

So far as the consideration for the first deed made by the
appellee to Pritchett is concerned the only consideration
which it is claimed appellee received for such deed was the
services rendered by Mr. Pritchett in defending the Max
Meyer & Bro. foreclosure suit.   There are several things
to be said of these services.   In the first place, but for the
voluntary intervention of Mr. Pritchett in that suit we are
led to believe, from the record before us, that Max Meyer
& Bro. would have proceeded to decree of foreclosure
against the father and mother of appellee only, notwith-
standing that the appellee's mother was dead at the time
the foreclosure suit was brought and the title to the real
estate had vested in the appellee.   Such a decree would
not have been binding upon the appellee and would not
have deprived him of the right at least to redeem his
property from such decree, if such decree would have in
any manner interfered with appellee's title.

Again, at the time Mr. Pritchett rendered these services
he was an officer of the court in which the foreclosure suit
was pending and had been by the court appointed guardian
*ad litem* for the appellee; he had accepted this appoint-
ment and was acting for the appellee.   Section 14, chapter
7, Compiled Statutes of 1893, then and now in force, pro-
vides: "It shall be the duty of every attorney to act as

18

the guardian of any infant defendant in any suit pending against him, when appointed for that purpose by order of the court; he shall prepare himself to make the proper defense, to guard the rights of said defendant, and shall be entitled to such compensation as the court shall deem reasonable." In view of this statute, and in view of the circumstances under which Mr. Pritchett rendered the services for the appellee in the foreclosure suit, we are constrained to say that if such services had been necessaries, nevertheless the appellee's contract, by which he paid Pritchett one-half the real estate in litigation in consideration of the services, would still have been voidable at the suit of the appellee. It was the duty of Pritchett to render the services he did. This was a duty imposed upon him by law and resulting from his profession. For performing the duties of a guardian *ad litem* an attorney must look, and look only, for the amount of his compensation to the court, and the compensation allowed the guardian should be taxed as costs in the proceedings and as such collected. Perhaps it might be filed as a claim against the minor's estate, but no other different or greater amount can be collected than that allowed by the court. Whatever may be said of the services rendered by Mr. Pritchett in the foreclosure suit for the appellee, such services of course cannot be returned in kind.

The consideration for the second deed was $240 in money paid by Pritchett to appellee's father. It is not claimed or pretended that this money, or any part of it, ever came into the possession of the appellee. It appears that the appellee's father bought a piano with this money and gave it to the appellee, and that he still has it. But the appellee was under no legal obligations to offer or tender or surrender this piano to Pritchett as a condition precedent to his right to disaffirm the deed; nor was the appellee under any legal obligation, as a condition precedent to his right to disaffirm the deed, to repay Pritchett

the money which he had paid appellee's father in consideration of the execution of the deed.   At the time appellee disaffirmed these deeds and brought this suit there was in his possession no part of the consideration parted with by Pritchett at the time appellee executed the deeds.

The final contention of the appellants is that the appellee, having executed the deeds, he is in equity estopped from disaffirming them as against innocent purchasers. . This is a remarkable argument, in view of the record in this case.   Not one of the appellants is an innocent purchaser of any part of this property in any sense whatsoever. There is in all this record not one word of evidence that the appellee, by any act or omission of his, either before or after his coming of age, induced either of the appellants to purchase any of the property in this suit.   Certainly the appellants, as purchasers of this property, were bound by such notice as the public records of Douglas county afforded of the fact of the infancy of the appellee.   Had appellants, intending to purchase this property, exercised ordinary care and looked into the records of Douglas county as to the title of this property, they would have found the title to the same in appellee's mother in 1874.   They would have found the record of the foreclosure suit of Max Meyer & Bro.   They would have seen that the decree in that case found that the title of this property had passed to appellee; that he was at that time an infant.   They would have found the first deed from appellee to Pritchett antedating the decree in the foreclosure suit.   They would have found of record in the office of the probate court of Douglas county the very day and hour of appellee's birth; the finding by that court that appellee was a minor in 1888, giving his age; the appointment by that court on that date of Pritchett as his guardian.   Certainly these records were sufficient to have protected the appellants had they looked for them.   If they did not examine the records and chose to rely upon the ability of their grantors to make good the title for

them, they have no one of whom to complain. Certainly they are in no position to invoke the aid of this court in this case to protect them as innocent purchasers; and besides there is no such thing as an innocent purchaser of a minor's property. The decree of the district court is

AFFIRMED.