WEBSTER STREET PARTNERSHIP, LTD., APPELLANT AND CROSS-APPELLEE, V. MATTHEW SHERIDAN AND PAT WILWERDING, APPELLEES AND CROSS-APPELLANTS.

368 N.W.2d 439

Filed May 17, 1985.   No. 84-037.

Thomas R. Wolff, for appellant.

Kirk L. Meisinger, and, on brief, Richard C. Sheridan, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Webster Street Partnership, Ltd. (Webster Street), appeals from an order of the district court for Douglas County, Nebraska, which modified an earlier judgment entered by the municipal court of the city of Omaha, Douglas County, Nebraska. The municipal court entered judgment in favor of

Webster Street and against the appellees, Matthew Sheridan and Pat Wilwerding, in the amount of $630.94. On appeal the district court found that Webster Street was entitled to a judgment in the amount of $146.75 and that Sheridan and Wilwerding were entitled to a credit in the amount of $150. The district court therefore entered judgment in favor of Sheridan and Wilwerding and against Webster Street in the amount of $3.25. It is from this $3.25 judgment that appeal is taken to this court.

Webster Street is a partnership owning real estate in Omaha, Nebraska. On September 18, 1982, Webster Street, through one of its agents, Norman Sargent, entered into a written lease with Sheridan and Wilwerding for a second floor apartment at 3007 Webster Street. The lease provided that Sheridan and Wilwerding would pay to Webster Street by way of monthly rental the sum of $250 due on the first day of each month until August 15, 1983. The lease also required the payment of a security deposit in the amount of $150 and a payment of $20 per month for utilities during the months of December, January, February, and March. Liquidated damages in the amount of $5 per day for each day the rent was late were also provided for by the lease.

The evidence conclusively establishes that at the time the lease was executed both tenants were minors and, further, that Webster Street knew that fact. At the time the lease was entered into, Sheridan was 18 and did not become 19 until November 5, 1982. Wilwerding was 17 at the time the lease was executed and never gained his majority during any time relevant to this case.

The tenants paid the $150 security deposit, $100 rent for the remaining portion of September 1982, and $250 rent for October 1982. They did not pay the rent for the month of November 1982, and on November 5 Sargent advised Wilwerding that unless the rent was paid immediately, both boys would be required to vacate the premises. The tenants both testified that, being unable to pay the rent, they moved from the premises on November 12. In fact, a dispute exists as to when the two tenants relinquished possession of the premises, but in view of our decision that dispute is not of any relevance.

In a letter dated January 7, 1983, Webster Street's attorney made written demand upon the tenants for damages in the amount of $630.94. On January 12, 1983, the tenants' attorney denied any liability, refused to pay any portion of the amount demanded, stated that neither tenant was of legal age at the time the lease was executed, and demanded return of $150 security deposit.

Webster Street thereafter commenced suit against the tenants and sought judgment in the amount of $630.94, which was calculated as follows:

| | |
|---|---:|
| Rent due Nov. | $250.00 |
| Rent due Dec. | 250.00 |
| Dec. utility allowance | 20.00 |
| Garage rental | 40.00 |
| Clean up and repair | |
|    Broken window, degrease | |
|    kitchen stove, shampoo | |
|    carpet, etc. | 46.79 |
| Advertising | 24.15 |
| Re-rental fee | 150.00 |
| | 780.94 |
| Less security deposit | 150.00 |
| | $630.94 |

To this petition the tenants filed an answer alleging that they were minors at the time they signed the lease, that the lease was therefore voidable, and that the rental property did not constitute a necessary for which they were otherwise liable. In addition, Sheridan cross-petitioned for the return of the security deposit, and Wilwerding filed a cross-petition seeking the return of all moneys paid to Webster Street. Following trial, the municipal court of the city of Omaha found in favor of Webster Street and against both tenants in the amount of $630.94.

The tenants appealed to the district court for Douglas County. The district court found that the tenants had vacated the premises on November 12, 1982, and therefore were only liable for the 12 days in which they actually occupied the apartment and did not pay rent. The district court also

12

permitted Webster Street to recover $46.79 for cleanup and repairs. The tenants, however, were given credit for their $150 security deposit, resulting in an order that Webster Street was indebted to the tenants in the amount of $3.25.

Webster Street then perfected an appeal to this court assigning but one error in terms which provide little assistance to the court in considering the appeal. The assignment of error, in pertinent part, reads as follows: "The District Court . . . abused [its] discretion and committed errors of law in improperly modifying the judgment of the Municipal Court . . . ." It appears, in fact, to be Webster Street's position that the district court erred in failing to find that Sheridan had ratified the lease within a reasonable time after obtaining majority, and was therefore responsible for the lease, and that the minors had become emancipated and were therefore liable, even though Wilwerding had not reached majority. Webster Street is simply wrong in both matters.

As a general rule, an infant does not have the capacity to bind himself absolutely by contract. See, *Smith v. Wade*, 169 Neb. 710, 100 N.W.2d 770 (1960); 43 C.J.S. *Infants* § 166 (1978). The right of the infant to avoid his contract is one conferred by law for his protection against his own improvidence and the designs of others. See *Burnand v. Irigoyen*, 30 Cal. 2d 861, 186 P.2d 417 (1947). The policy of the law is to discourage adults from contracting with an infant; they cannot complain if, as a consequence of violating that rule, they are unable to enforce their contracts. As stated in *Curtice Co. v. Kent*, 89 Neb. 496, 500, 131 N.W. 944, 945 (1911): "The result seems hardly just to the [adult], but persons dealing with infants do so at their peril. The law is plain as to their disability to contract, and safety lies in refusing to transact business with them."

However, the privilege of infancy will not enable an infant to escape liability in all cases and under all circumstances. For example, it is well established that an infant is liable for the value of necessaries furnished him. 42 Am. Jur. 2d *Infants* § 65 (1969). See, also, *Burnand v. Irigoyen, supra; Merrick v. Stephens*, 337 S.W.2d 713 (Mo. App. 1960); *Englebert v. Troxell*, 40 Neb. 195, 58 N.W. 852 (1894). An infant's liability for necessaries is based not upon his actual contract to pay for

them but upon a contract implied by law, or, in other words, a quasi-contract. 42 Am. Jur. 2d, *supra.*

Just what are necessaries, however, has no exact definition. The term is flexible and varies according to the facts of each individual case. In *Cobbey v. Buchanan*, 48 Neb. 391, 397, 67 N.W. 176, 178 (1896), we said: " 'The meaning of the term "necessaries" cannot be defined by a general rule applicable to all cases; the question is a mixed one of law and fact, to be determined in each case from the particular facts and circumstances in such case.' " A number of factors must be considered before a court can conclude whether a particular product or service is a necessary. As stated in *Schoenung v. Gallet*, 206 Wis. 52, 54, 238 N.W. 852, 853 (1931):

> "The term 'necessaries,' as used in the law relating to the liability of infants therefor, is a relative term, somewhat flexible, except when applied to such things as are obviously requisite for the maintenance of existence, and depends on the social position and situation in life of the infant, as well as upon his own fortune and that of his parents. The particular infant must have an actual need for the articles furnished; not for mere ornament or pleasure. The articles must be useful and suitable, but they are not necessaries merely because useful or beneficial. Concerning the general character of the things furnished, to be necessaries the articles must supply the infant's personal needs, either those of his body or those of his mind. However, the term 'necessaries' is not confined to merely such things as are required for a bare subsistence. There is no positive rule by means of which it may be determined what are or what are not necessaries, for what may be considered necessary for one infant may not be necessaries for another infant whose state is different as to rank, social position, fortune, health, or other circumstances, the question being one to be determined from the particular facts and circumstances of each case."

(Citation omitted.) This appears to be the law as it is generally followed throughout the country.

In *Ballinger v. Craig*, 95 Ohio App. 545, 121 N.E.2d 66, (1953), the defendants were husband and wife and were 19 years

of age at the time they purchased a house trailer. Both were employed. However, prior to the purchase of the trailer, the defendants were living with the parents of the husband. The Court of Appeals for the State of Ohio held that under the facts presented the trailer was not a necessary. The court stated:

> " 'To enable an infant to contract for articles as necessaries, he must have been in actual need of them, and obliged to procure them for himself. They are not necessaries as to him, however necessary they may be in their nature, if he was already supplied with sufficient articles of the kind, or if he had a parent or guardian who was able and willing to supply them. The burden of proof is on the plaintiff to show that the infant was destitute of the articles, and had no way of procuring them except by his own contract.' "

(Citation omitted.) *Id.* at 547, 121 N.E.2d at 67. Under Ohio law the marriage of the parties did not result in their obtaining majority.

In 42 Am. Jur. 2d *Infants* § 67 at 68-69 (1969), the author notes:

> Thus, articles are not necessaries for an infant if he has a parent or guardian who is able and willing to supply them, and an infant residing with and being supported by his parent according to his station in life is not absolutely liable for things which under other circumstances would be considered necessaries.

The undisputed testimony is that both tenants were living away from home, apparently with the understanding that they could return home at any time. Sheridan testified:

Q. During the time that you were living at 3007 Webster, did you at any time, feel free to go home or anything like that?

A. Well, I had a feeling I could, but I just wanted to see if I could make it on my own.

Q. Had you been driven from your home?

A. No.

Q. You didn't have to go?

A. No.

Q. You went freely?

A. Yes.

Q. Then, after you moved out and went to 3417 for a week or so, you were again to return home, is that correct?

A. Yes, sir.

It would therefore appear that in the present case neither Sheridan nor Wilwerding was in need of shelter but, rather, had chosen to voluntarily leave home, with the understanding that they could return whenever they desired. One may at first blush believe that such a rule is unfair. Yet, on further consideration, the wisdom of the rule is apparent. If, indeed, landlords may not contract with minors, except at their peril, they may refuse to do so. In that event, minors who voluntarily leave home but who are free to return will be compelled to return to their parents' home—a result which is desirable. We therefore find that both the municipal court and the district court erred in finding that the apartment, under the facts in this case, was a necessary.

Having therefore concluded that the apartment was not a necessary, the question of whether Sheridan and Wilwerding were emancipated is of no significance. The effect of emancipation is only relevant with regard to necessaries. If the minors were not emancipated, then their parents would be liable for necessaries provided to the minors. As we recently noted in *Accent Service Co., Inc. v. Ebsen*, 209 Neb. 94, 96, 306 N.W.2d 575, 576 (1981):

"In general, even in the absence of statute, parents are under a legal as well as a moral obligation to support, maintain, and care for their children, the basis of such a duty resting not only upon the fact of the parent-child relationship, but also upon the interest of the state as parens patriae of children and of the community at large in preventing them from becoming a public burden. However, various voluntary acts of a child, such as marriage or enlistment in military service, have been held to terminate the parent's obligation of support, the issue generally being considered by the courts in terms of whether an emancipation of the child has been effectuated. In those cases involving the issue of whether a parent is obligated to support an unmarried minor child

who has voluntarily left home without the consent of the parent, the courts, in actions to compel support from the parent, have uniformly held that such conduct on the part of the child terminated the support obligation. . . ."

If, on the other hand, it was determined that the minors were emancipated and the apartment was a necessary, then the minors would be liable. But where, as here, we determine that the apartment was not a necessary, then neither the parents nor the infants are liable and the question of emancipation is of no moment.

Because the rental of the apartment was not a necessary, the minors had the right to avoid the contract, either during their minority or within a reasonable time after reaching their majority. See *Smith v. Wade*, 169 Neb. 710, 100 N.W.2d 770 (1960). Disaffirmance by an infant completely puts an end to the contract's existence, both as to him and as to the adult with whom he contracted. *Curtice Co. v. Kent*, 89 Neb. 496, 131 N.W. 944 (1911). Because the parties then stand as if no contract had ever existed, the infant can recover payments made to the adult, and the adult is entitled to the return of whatever was received by the infant. *Id.*

The record shows that Pat Wilwerding clearly disaffirmed the contract during his minority. Moreover, the record supports the view that when the agent for Webster Street ordered the minors out for failure to pay rent and they vacated the premises, Sheridan likewise disaffirmed the contract. The record indicates that Sheridan reached majority on November 5. To suggest that a lapse of 7 days was not disaffirmance within a reasonable time would be foolish. Once disaffirmed, the contract became void; therefore, no contract existed between the parties, and the minors were entitled to recover all of the moneys which they paid and to be relieved of any further obligation under the contract. The judgment of the district court for Douglas County, Nebraska, is therefore reversed and the cause remanded with directions to vacate the judgment in favor of Webster Street and to enter a judgment in favor of Matthew Sheridan and Pat Wilwerding in the amount of $500, representing September rent in the amount of $100, October rent in the amount of $250, and the security deposit in the amount of $150.

REVERSED AND REMANDED WITH DIRECTIONS.