Kim Young appeals from a judgment of the Tuscaloosa Circuit Court awarding damages to Phillip Weaver for alleged breaches by Young of an apartment lease between Young, as tenant, and Weaver, as landlord. We reverse.
In the fall of 2001, Young, who at the time was 18 years old and had been living with her parents all of her life, decided that she "wanted to move out and get away from [her] parents and be on [her] own." Young and a friend, Ashley Springer, also a minor at the time, signed a contract for the lease of an apartment with Weaver on September 20, 2001. No adult signed the lease as a guarantor. Young was employed on a full-time basis at a Lowe's hardware store located in Tuscaloosa at the time she entered into the lease agreement. Young paid a security deposit in the amount of $300; the rent for the apartment was $550 per month, and the lease was set to expire on July 31, 2002.
Young and Springer moved into the apartment in late September and, together, paid rent at the agreed-upon rate for the portion of that month in which they lived in the apartment. Young and Springer continued to live in the apartment during October and most of November 2001; Young moved out near the end of November and returned to live with her parents. Young paid the full amount of *Page 236 
her portion[1] of the rent for October and November, but she stopped making any rent payments after she moved out of the apartment.
Young had a dog which stayed in the apartment with the roommates; it is undisputed that the dog damaged part of the floor and the bathroom door in the apartment, causing $270 in damage. Young did not pay for this damage before vacating the apartment. Weaver managed to rent the apartment to someone else in June 2002.
On February 19, 2002, Weaver filed a claim against Young in the Small Claims Court of Tuscaloosa County, seeking damages for the unpaid rent and the damage done by Young's dog to the apartment. The court ruled in favor of Weaver and awarded $1,370 in damages. Young appealed the decision to the Tuscaloosa Circuit Court. The case was tried de novo on December 5, 2002, in a hearing in which the trial court took evidence ore tenus. The circuit court also entered a judgment in favor Weaver and awarded him $1,095, the amount of Young's share of the unpaid rent for December 2001 and January and February 2002, as well as the $270 in damage caused by Young's dog. Young appeals.
Because the trial court took evidence ore tenus, its judgment is given a presumption of correctness and may not be reversed unless it is shown to be unsupported by substantial evidence and plainly and palpably wrong. See, e.g., Callaway v. E.H. SmithElec. Contractors, Inc., 814 So.2d 893 (Ala.Civ.App. 2001).
Among other things, Young argues on appeal that the apartment was not a "necessity" and that, therefore, as a minor, she was not legally bound by the lease and owes Weaver nothing. We find this argument to be dispositive.[2]
 "Under Alabama law, one who is unmarried and has not reached the age of 19 years is deemed to be a minor, i.e., subject to the disabilities of nonage (although such disabilities may, in certain circumstances, be removed by a judgment of a juvenile court). See § 26-1-1, § 26-13-1 et seq., § 30-4-15, and § 30-4-16, Ala. Code 1975. Among the disabilities of nonage is the incapacity to make a binding contract: `It is a well-established general rule at common-law, and recognized in this state, that a minor is not liable on any contract he makes and that he may disaffirm the same.' Children's Hosp. of Birmingham, Inc. v. Kelley, 537 So.2d 917, 917 (Ala.Civ.App. 1987), aff'd in pertinent part, rev'd on other grounds, Ex parte Odem, 537 So.2d 919 (Ala. 1988)."
Williams v. Baptist Health Sys., Inc., 857 So.2d 149, 151
(Ala.Civ.App. 2003). However,
 "Alabama law, like the law of most other states, provides that persons providing `necessaries'[3] of life to minors may recover the reasonable value of such necessaries irrespective of the existence, *Page 237 
or nonexistence, of a (voidable) contract respecting those necessaries. As stated by the Alabama Supreme Court in Ragan v. Williams, 220 Ala. 590, 127 So. 190 (1930), `[w]hen necessaries are furnished to one who by reason of infancy cannot bind himself by his contract, the law implies an obligation on the part of such person to pay for such "necessaries" out of his own property.' 220 Ala. at 590, 127 So. at 191."
Williams, 857 So.2d at 151 (emphasis added).
Young does not seek reversal of the trial court's judgment on the ground that the use of the apartment after November 2001 was not "furnished" to her.[4] Instead, her principal argument on appeal is that the apartment was not a necessity. We agree that this case must be disposed of in Young's favor on this basis.
A necessity has been defined as something "`necessary to the position and condition of the [minor].'" Ex parte Odem,537 So.2d 919, 920 (Ala. 1988) (quoting Wiggins Estate Co. v.Jeffery, 246 Ala. 183, 189, 19 So.2d 769, 774 (1944)). In Raganv. Williams, 220 Ala. 590, 591, 127 So. 190, 191 (1930), our Supreme Court stated that "[w]hat are `necessities' within this rule [have been] held to be a relative term . . . and somewhat flexible" and that "every case stands upon its peculiar facts and reasonable necessities, according to the circumstances of each case; and there is no positive or iron-bound rule by means of which it may be determined what are or what are not necessaries." Further, our courts have commented that "the term [`necessity'] is to be made applicable to such things as are obviously requisite for the maintenance of existence of the infant."Harris v. Raughton, 37 Ala.App. 648, 650, 73 So.2d 921, 923
(1954).
Determining whether the subject of a contract is a necessity to a minor entails a two-step analysis:
 "`It is for the court to determine, as a matter of law, in the first place, whether the things supplied may fall within the general classes of necessaries, and if so, whether there is sufficient evidence to warrant the jury in finding that they are necessary. If either of these preliminary inquiries be decided in the negative, it is the duty of the court to nonsuit the plaintiff who seeks to recover from the [minor]. If they be decided in the affirmative, it is then for the jury to determine whether, under all the circumstances, the things furnished were actually necessary to the position and *Page 238 
condition of the [minor], as well as their reasonable value, and whether the [minor] was already sufficiently supplied. . . .'"
Odem, 537 So.2d at 920 (quoting Wiggins Estate Co. v.Jeffery, 246 Ala. at 189, 19 So.2d at 774). Thus, first a court must determine whether the subject of the contract is generally considered a necessity. If the subject is so considered, then it is for the fact-finder to determine, on the particular facts and circumstances of the case, whether the subject of the contract is, in fact, a necessity to that minor. The first inquiry is a question of law; the second inquiry entails a factual determination.
There is little question that, in general, lodging is considered a necessity. As the Ragan Court observed, typical necessities include "things for bodily need — food, support and maintenance, clothing, medicine and medical attention, and lodging." Ragan, 220 Ala. at 591, 127 So. at 191. Thus, the question in this case is whether the trial court erred in concluding as a factual matter that the apartment leased by Young was a necessity for her.
The trial court noted that "Alabama courts have held that lodging is a necessity" and that "[Young] was employed full-time at the time she entered into the contract." Immediately after making those observations, the trial court concluded: "The court finds under the facts of this case the contract was for a necessity." Id.
Young contends that the apartment was not a necessity to her because, she argues, her parents did not "kick" her out of their house and they kept her room waiting so that she could return to their home at any time. Young's father testified that every time he talked to his daughter on the telephone while she lived in the apartment he asked her to move back in with them; he also testified that he was willing to take Young back at any time. In essence, because Young's parents were able and willing to house Young at the same time she contracted to lease the apartment, Young argues that in this case the particular lodging at issue was not a necessity.
In support of this contention, Young cites Harris v.Raughton, 37 Ala.App. 648, 73 So.2d 921. In Harris:
 "Bremman R. Raughton, a minor, bought an automobile from the appellants. He paid $90 cash as the down payment. According to [Raughton's] testimony, the car would not operate satisfactorily, so in about two days after the sale he returned it to the appellants and demanded a refund of the initial payment. This was refused, and the automobile was left at appellants' place of business."
37 Ala.App. at 649, 73 So.2d at 922. Raughton sued Harris and the other appellants to recover his down payment. The evidence showed that Raughton was married and had bought the automobile to use as transportation to and from his place of employment. However, the evidence also showed that Raughton already owned a truck that he had been using for the same purpose and that he had not disposed of at the time he purchased the new automobile. The court determined that, because Raughton had another vehicle available to him, the automobile in question was not a necessity, and, thus, Raughton was at liberty to void the contract for the purchase of the automobile.
By analogy, Young argues that because she had a place to live provided by her parents still available to her at the time she signed the lease agreement and during the time she lived in the apartment, the apartment was not a necessity. In other words, she argues that the apartment was not "`necessary to [Young's] *Page 239 
position and condition as a [minor]'" at the time she signed the lease. Odem, 537 So.2d at 920.
Several authorities from other states support this position.Webster Street Partnership, Ltd. v. Sheridan, 220 Neb. 9,368 N.W.2d 439 (1985), involved facts similar to those in this case. In Sheridan, two minor boys signed a lease with a real estate company for an apartment in mid-September 1982 and moved into the apartment soon thereafter. The lease was to last through mid-August 1983. The boys paid the required rent for September and October, but in mid-November they found themselves financially unable to make that month's rental payment. Because they were unable to pay, the boys vacated the premises. In January 1983, the real estate company sued the boys to obtain damages for unpaid rent and expenses for November and December of the previous year. The boys denied any liability based on their status as minors.
The Nebraska Supreme Court noted that Nebraska, like most states, follows the common-law rule that infants do not have the capacity to bind themselves absolutely to a contract unless it is one for necessities. It also noted that "[j]ust what are necessaries, however, has no exact definition. The term is flexible and varies according to the facts of each individual case." 220 Neb. at 13, 368 N.W.2d at 442. The court then observed that the evidence showed that the two boys "were living away from home, apparently with the understanding that they could return home at any time," and that "[i]t would therefore appear that . . . neither [minor] was in need of shelter but, rather, had chosen to voluntarily leave home, with the understanding that they could return whenever they desired." 220 Neb. at 14,368 N.W.2d at 443. Based on this evidence, the Nebraska Supreme Court ruled that the apartment was not a necessity.
Likewise, in Ballinger v. Craig, 95 Ohio App. 545,121 N.E.2d 66 (1953), the defendants were husband and wife and were minors at the time they purchased a house trailer. Both were employed. However, before they purchased the trailer, the defendants were living with the parents of the husband. The Ohio Court of Appeals ruled that under the facts presented the house trailer was not a necessity, reasoning that:
 "`To enable an infant to contract for articles as necessaries, he must have been in actual need of them, and obliged to procure them for himself. They are not necessaries as to him, however necessary they may be in their nature, if he was already supplied with sufficient articles of the kind, or if he had a parent or guardian who was able and willing to supply them.'"
95 Ohio App. at 547, 121 N.E.2d at 67 (quoting Johnson v.Newberry, 267 S.W. 476, 479 (Tex. Comm'n App. 1924)). See,e.g., Bensinger's Coex'rs v. West, 255 S.W.2d 27, 29 (Ky. 1953) ("To be bound upon a contract for necessaries, an infant must be in actual need of them and obliged to procure them for himself. They are not necessaries to the infant if he has a parent or guardian who is willing and able to supply them."); 42 Am.Jur.2dInfants § 71 (2000) ("To be held liable for necessaries, an infant must not have at the time of delivery an adequate supply from other sources such as a parent or guardian who is able and willing to supply them.") (footnotes omitted); and 42 Am.Jur.2dInfants § 75 (2000) ("[H]ousing is not per se a necessary so minors are liable for signing contracts for housing, at least when his or her parents remain willing and able to furnish housing but the children move out voluntarily.") (footnote omitted). The undisputed *Page 240 
evidence in this case indicates that, just as in those cases discussed above, Young's parents were willing and able to provide lodging for their daughter at the time she rented the apartment from Weaver.
In Ragan, 220 Ala. 590, 127 So. 190, the Alabama Supreme Court addressed a case in which a lessor sued a minor lessee for rental payments on a house and the minor pleaded incapacity. The trial court had ruled that the minor had to pay rent for the house. The Supreme Court affirmed, reasoning that
 "[t]he testimony, when considered as a whole, shows that the house occupied as the home for the minor and his family, under the circumstances showing his complete emancipation and necessities of earning a livelihood for himself and his immediate family (wife and child), was a necessity for him as a farmer, who was farming for himself and living with his family, apart from his or her family and adjacent to the lands he cultivated."
220 Ala. at 591-92, 127 So. at 192.
Ragan is factually distinguishable from the instant case because the situation and condition of Ragan differed markedly from Young's situation and condition. Ragan was emancipated, married, and had children; none of those circumstances are true of Young. Ragan's house was next to the farmland from which he made his living; while Young testified that she worked full-time at Lowe's during the period when she lived in the apartment, she also testified that she continued to work there after she moved back into her parents' residence. Thus, unlike in Ragan, Young did not need the apartment to maintain her employment. Finally, Ragan and his family did not live with his parents immediately prior to living in the house in question, and there is no indication that Ragan and his family could have moved in with his parents if they did not live in the house. In contrast, Young had lived with her parents before renting the apartment, and both she and her father testified that she could have moved back into her parents' house at any time during the period that she rented the apartment. In fact, when she left the apartment, Young did move back in to her parents' house and resided there during the very period for which Weaver now seeks to collect rent. In sum, consideration of the factors the Ragan Court emphasized in determining that the lodging in question was a necessity in that case supports the conclusion that the lodging in question is not a necessity in the present case.
In contrast to Ragan, in Ex parte McFerren, 184 Ala. 223,63 So. 159, the Alabama Supreme Court concluded that the leasehold in question was not a necessity. It reached that conclusion on the ground that the minor in that case never actually used the leasehold, a fact which itself demonstrated that the leasehold was not a necessity: "The lease representing nothing that was necessary for the infant, and he, in fact, derived no benefit whatever from it." 184 Ala. at 234,63 So. at 162. Likewise, in the present case, the fact that the apartment in question was not a necessity for Young, particularly during the post-November 2001 period for which Weaver seeks to recover rent, is demonstrated by the fact that Young did not reside in the apartment after that date, but returned to live with her parents.
Given the authorities cited above and the particular facts of this case, we conclude that the trial court erred in its determination that the apartment in question was a necessity for Young. Therefore, as a minor, Young is not legally bound under the lease agreement. This result may seem unjust in some ways, but as the *Page 241 
Supreme Court observed in Ex parte McFerren:
 "[t]he above rule [that a minor may disaffirm a contract] may, at times, work a hardship. The law must, however, have a definite policy, and its rules must be fixed. The law has fixed its policy with reference to the protection of infants with regard to their contracts, and those who deal with them, except when actually supplying them with necessaries, deal with them at their peril."
184 Ala. at 235, 63 So. at 162.
Accordingly, the judgment of the trial court is reversed, and the cause is remanded for the trial court to enter a judgment in favor of Young.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] Young and Springer agreed to share the rent equally. Weaver seeks in this action only to recover that portion of the monthly rent for which Young was responsible, i.e., $275.
[2] Our reversal of the trial court's judgment insofar as it awards to Weaver $270 for damage to the apartment caused by Young's dog is also supported by the fact that the record contains undisputed evidence, as noted by Young in her brief to this court, that Weaver was in receipt of a $300 deposit that would be applied to those damages. Weaver does not address this issue in his brief to this court.
[3] The terms "necessities" and "necessaries" are often used interchangeably in cases in this area of law. For consistency, except when quoting from an authority, this opinion uses the term "necessity" for the concept at issue.
[4] "An infant's liability for necessaries is based not upon his or her actual contract to pay for them, but upon a contract implied by law, or in other words, a quasi-contract," 42 Am.Jur.2d Infants § 64 (2000) (footnote omitted). Accordingly, it is generally recognized that "[w]hen an infant's contract for necessaries remains executory and the things contracted for have not been furnished him, the infant is not bound by the contract and may repudiate it," id. See 43 C.J.S. Infants § 180 (1978) ("To render an infant liable for necessaries they must have been actually furnished; hence [a minor] cannot make a binding executory agreement to purchase necessaries or to pay for necessaries to be supplied him, and he may disaffirm such contract or agreement before it has been performed and recover the unearned portion of the money paid in advance.") (footnotes omitted); Restatement of Restitution § 139. See also Ex parteOdem, 537 So.2d 919 (Ala. 1988) (describing the obligation of a minor to pay for necessary medical services as "aris[ing] from a quasi-contractual relationship created by operation of law which enforces the implied contract to pay," and holds the minor "liable for the just value of the necessaries"); Ex parteMcFerren, 184 Ala. 223, 224, 63 So. 159, 159 (1913) (observing that "[i]n all cases in which [an infant lessee] has been held liable for rent or in which he has been denied to recover rents paid, he has received some actual benefit from the use of the property as a tenant").