[S. F. No. 4046.   Department Two.—January 8, 1907.]

## RALPH W. S. CUMMINGS, Respondent, v. STROBRIDGE LAND SYNDICATE, PACIFIC IMPROVEMENT COMPANY, MARY J. BLASINGAME et al., Appellants; and C. G. SAYLE, Co-Defendant.

FORECLOSURE OF GUARDIAN'S MORTGAGE BY WARD—RELEASE BY GUARDIAN—PARTIES—FAILURE OF WARD TO TESTIFY — INSTIGATION OF ACTION—WANT OF EQUITY.—In an action by an adult ward to foreclose a mortgage executed to him by his guardian more than twenty years previously, when the ward was one year old, to secure money "borrowed" or appropriated by the guardian without order of court, and which was released by the guardian without order of court, in favor of subsequent mortgagees and purchasers, made parties defendant with the guardian, where the plaintiff failed to testify whether the guardian had settled with him or not, or whether anything was due, and where it appears that plaintiff lived with and had been always supported by his guardian, who was his stepfather, and that the action was instigated and controlled by the guardian defendant and plaintiff's mother, it is sufficiently shown to be without equity.

ID.—CONTRACTS—PARTIES—INCAPACITY OF INFANT WARD.—There must be two parties to every contract; and a note and mortgage to be of any validity must be legal contracts.   An infant one year of age, being plainly incapable of contracting, it may be seriously doubted whether any contract could be said to exist at all between the guardian and his infant ward.

ID.—MISAPPROPRIATION OF MONEY—EMBEZZLEMENT.—The money alleged to have been "borrowed" from the infant and appropriated to the guardian's use without any order of court was misappropriated or embezzled by him; and the note and mortgage to the ward could be no defense to such embezzlement.

ID.—EFFECT OF RELEASE—MONEY BORROWED FROM NEW MORTGAGEE—WARD'S PROPERTY—MAXIM OF EQUITY.—Where the release of the mortgage by the guardian without an order of court was made to induce another mortgagee to advance money to the guardian in the same amount, his intention not to make it the ward's money is immaterial.   Equity makes such money the property of the ward, in pursuance of its maxim that it will regard as done that which ought to be done.

ID.—SECOND EMBEZZLEMENT.—Any misappropriation of the ward's money received from such other mortgagee in consideration of the release of the first mortgage made to the ward for money embezzled was only a second embezzlement of the ward's money.

ID.—PROTECTION OF INNOCENT PURCHASERS—CLEARING OF UNDISCLOSED LIEN — CONSEQUENCES OF FURTHER MISAPPROPRIATION. — Where innocent purchasers of the mortgaged property paid full value therefor to the guardian, in honest ignorance of the situation, and relying upon the absence of any apparent encumbrance of record; conceding that the ward had in fact an undisclosed lien upon the property, so much of the money paid by the purchasers as may be necessary to clear this lien must be deemed taken by the guardian as money of the ward; and if the guardian thereafter made further misappropriation of it the purchasers are protected against its consequences.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

John S. Chapman, Johnston & Jones, Stanton L. Carter, Platt & Bayne, and H. H. Welsh, for Appellants.

Coldwell & Borland, and N. C. Coldwell, for Respondent.

HENSHAW, J.—This is an action to foreclose a mortgage alleged to have been given by the defendant Sayle to plaintiff on the fifteenth day of November, 1881, to secure the payment of a promissory note made by Sayle at the same date. The amount of the promissory note was two thousand dollars. A trial was had, resulting in judgment for plaintiff in the sum of $16,480.50, and for a decree of the sale of the mortgaged premises. The motion for a new trial was denied, and certain of the defendants appeal from the judgment and from the order denying their motion. The salient facts of the case are these: Sayle, who was a practicing lawyer, married the mother of the plaintiff, who was then an infant about a year old. He was appointed guardian of the person and estate of the infant, and there came into his possession as such guardian of the estate the sum of two thousand dollars. He continued to act as guardian, and the court finds that he remained such guardian until the sixteenth day of May, 1901, at which time the child attained its majority; but in fact there was never any settlement of Sayle's account as guardian, nor was there ever anything done in reference to the guardian-

ship, and he was never discharged. Immediately upon, or shortly after, receiving this two thousand dollars belonging to his infant ward, Sayle, who was the leading witness for the plaintiff, declares that he "borrowed" the money. The fact appears to be that he appropriated it to his own use without any order of court—in brief, embezzled it. He testifies he made a promissory note to his ward, then about a year and a half old, in the sum of two thousand dollars, and executed a mortgage upon land which he owned, securing this note. He filed the mortgage with the county recorder of Fresno County, where the land was situated, and paid the fees for the filing, and delivered the promissory note to his wife, who was the mother of the plaintiff. None of these transactions, it is perhaps needless to say,—neither the "borrowing" of the ward's money, nor the giving of the note and mortgage,— was done by the authority of, or had the sanction of the court. About a year afterwards, desiring to borrow more money, he caused to be entered upon the margin of the record an acknowledgment of full payment and satisfaction of the mortgage and the debt thereby secured, signing it "Ralph Wardlaw Cummings, by C. G. Sayle, his duly acting and qualified guardian." This was signed and acknowledged by him on the 24th of October, 1882. Upon the same day that this release was made he gave a note and mortgage to one Baird for two thousand dollars, and received the money therefor. He says that he did not receive the two thousand dollars in gold coin from Baird on that day for Ralph Cummings, and he did not receive the two thousand dollars on that day to satisfy the mortgage; that he received it a few days afterwards from Mr. Baird. He did not tell Mr. Baird when he borrowed the money that it was the boy's; that he was doing it as part of the business of the plaintiff. He did tell Mr. Baird, when asked if he had put anything on the property, that he had put a two-thousand-dollar mortgage on it in favor of his boy, and told him also that he could control it, and that it would not bother his mortgage, if he would let him have the money and let his mortgage go on record. Baird only agreed to let him have the money upon his acknowledgment of payment and satisfaction of the mortgage to Ralph Cummings. Baird refused to have a second mortgage, and his mortgage was taken as a first mortgage, upon condition

of the payment and satisfaction of the mortgage already on the property. He had intended to replace the canceled mortgage of his ward by placing a second mortgage upon the same property in favor of the ward. He did not, however, do this. Years afterwards he made another mortgage to the ward upon another piece of property, to secure the same indebtedness. A satisfaction of the Baird mortgage was entered on March 13, 1884, and on the same day Sayle mortgaged the same land to the predecessor in interest of defendant, Mary J. Blasingame, for three thousand dollars. Subsequent to these transactions he sold the land in parcels to different purchasers for its full value; that is to say, there was never any reduction of the purchase price because of the existence, or supposed existence, of any mortgage upon the property in favor of the plaintiff. The years passed and the ward grew to the age of majority. During this time he lived with his stepfather and was supported by him. There has never been any settlement of guardianship accounts, and it has never been determined whether Sayle is indebted to his ward, or whether, upon the other hand, the ward's estate is liable to him. Sayle filed a verified petition in insolvency during the ward's minority and made no mention of the mortgage which in this action is claimed to be subsisting and in full force against the property. The mortgage note, indeed, is not produced. Sayle explains that this was carelessly burned by him in the destruction of some worthless papers when he was changing his law-office. The plaintiff himself is not a witness in the case to testify as to any of these matters; as, for example, whether or not there was any sum due him from his guardian, because manifestly, if his guardian had in fact settled with him for this money so borrowed twenty and more years ago, equity would not permit the enforcement of the mortgage. And, more than this, not only is the plaintiff not a witness, but the suit seems to have been instigated and brought by his mother and stepfather. Thus, Mrs. Sayle, wife of Sayle, testifying as to a certain fact, says that she discovered it "in San Francisco when I started this suit." Many more circumstances could be pointed out, but these are sufficient to show that the action, while appealing to the equitable side of the court for the enforcement of a ward's rights, is one wholly without equity. The contention of plaintiff is that the guard-

ian had no power or authority, without the order of a court, to have released the mortgage, and that the mortgage stands as a valid and subsisting lien upon the property; that while it is true that the purchasers paid full price for the property, and that upon the record the mortgage to plaintiff had been released, yet these facts are not sufficient in defense, because they were put upon notice that the guardian could not release the mortgage except upon payment of the money and order of court. This was the view which the trial court adopted, and judgment passed for plaintiff accordingly.

Some interesting questions are here presented, the determination of which would unquestionably prove extremely embarrassing to plaintiff's case. Thus, plaintiff begins his proofs with a showing of this borrowed money by his guardian and the making of the so-called note and mortgage to him— the ward. But a note and mortgage, to be of any validity whatsoever, must be legal contracts, and to every contract there must be two parties. An infant of a year old is plainly incapable of contracting, and it may be seriously doubted, under the circumstances here disclosed, with the additional fact that one of the contracting parties stood in the confidential relation of guardian to the other, whether any contract could be said to exist at all. Certainly if Sayle had been indicted for embezzlement, his declaration that he had borrowed the money from his ward, and by contract had given a note and mortgage to an infant, of the tender age of one year, would scarcely be held to fill the measure of a valid defense. But aside from this and other like questions with which the case abounds, one proposition is determinative of the matter, and upon it this decision may rest. Assuming or conceding that the note and mortgage as given to the ward were valid so as to encumber the land, assuming also and conceding that the release of this mortgage was without authority of the court, conceding also that the witness Sayle does endeavor, though shufflingly and evasively, to have it appear that he did not pay over to his ward the money which he received from the Baird mortgage, the fact remains that equity itself, under such circumstances as those here disclosed, makes such payment in pursuance of its maxim that it will regard as done that which ought to have been done. When the money for the release of this mortgage ·came into Sayle's hands it

was, in equity, the ward's money, and any improper use which Sayle thereafter made of it was but a second embezzlement of the ward's funds. So, too, as to the innocent purchasers— the defendants here—who paid full value for their property. If they, in honest ignorance of the situation, paid full value for property which, so far as the record went, was clear of any encumbrance to this minor ward, and if in fact the ward had some undisclosed lien upon the property, so much of the moneys that these purchasers paid as might be necessary to clear this lien was taken by the guardian as money of the ward, and if the guardian thereafter made further misappropriation of it, the purchasers are protected against its consequences. This principle is plainly and elaborately enunciated in *Hadley* v. *Chapin*, 11 Paige Ch. 245, and if many more cases enunciating the same principle may not be cited, it may be said that few have had the temerity to maintain actions such as the one at bar, and that no cases can be found upholding a contrary doctrine.

It becomes unnecessary to consider the many other objections advanced by appellants, both to the rulings of the court in admitting and rejecting evidence and to the sufficiency of the evidence to sustain the judgment, because the proposition which we have enunciated is determinative of the case, for which reason the judgment and order appealed from are reversed as to all of the appealing defendants.

McFarland, J., and Lorigan, J., concurred.