[L. A. No. 3212.  Department One.—December 16, 1913.]

## HAKES INVESTMENT COMPANY (a Corporation), Respondent, v. ANDREW JACKSON LYONS, Appellant.

MINORS—DEED OF MINOR UNDER EIGHTEEN YEARS IS VOID—DISAFFIRMANCE UNNECESSARY.—Under sections 33, 34, and 35 of the Civil Code, as amended in 1874, a deed of real estate executed by a minor when under the age of eighteen years is absolutely void, and he is under no obligation to disaffirm it within a reasonable time after becoming of age, in order to render it ineffectual.

ID.—CONSTRUCTION OF SECTION 35 OF CIVIL CODE—DISAFFIRMANCE NOT NECESSARY TO AVOID CERTAIN CONTRACTS.—The provisions of section 35 concerning the disaffirmance of contracts entered into by a minor whilst he is under eighteen are to be understood as intended to refer solely to contracts other than those described in section 33, and that it is not the purpose thereby to make a disaffirmance necessary to avoid a contract of a minor under that age relating to real property, or to personal property not in his immediate possession or control, or delegating a power.

ID.—EFFECT ON TITLE OF FILING PETITION IN INSOLVENCY.—Evidence that subsequent to the execution of the void deed the grantor filed a petition in insolvency with the accompanying schedules, without any further showing as to the result of the insolvency proceedings, is insufficient to show that the title to the property described in deed passed to the assignee in insolvency.

ID.—RATIFICATION OF VOID DEED OF MINOR—ESTOPPEL.—The deed of such minor, not being binding in any event, but being void from the beginning, could not be validated by a ratification. There must be some act which is the equivalent of the execution of a new contract, or something which operates as an estoppel.

ID.—FACTS NOT CREATING ESTOPPEL.—Such void deed could not of its own force operate as an estoppel, nor did the fact that it was duly recorded create an estoppel.

ID.—ESTOPPEL NOT SHOWN BY EVIDENCE.—It is held that the evidence does not sustain the conclusion that the grantor in such void deed was otherwise estopped to claim title to the property described therein as against the successors in interest of his grantee.

ID.—DISCLAIMER OF OWNERSHIP OF LAND IN INSOLVENCY PROCEEDINGS. A disclaimer of any ownership of real property made by such grantor in insolvency proceedings instituted by him after he had attained his majority, and about fourteen years after his execution of such void deed, did not of itself divest his title to the property described in the deed, or create an estoppel against him in favor of one who had no knowledge of it.

APPEAL from a judgment of the Superior Court of San Diego County. W. R. Guy, Judge.

The facts are stated in the opinion of the court.

M. R. Thorp, and Riley & Hubbell, for Appellant.

Mills & O'Farrell, for Respondent.

SHAW, J.—The defendant appeals from the judgment. The appeal was taken within sixty days after the judgment was entered. The evidence taken at the trial is presented in a bill of exceptions.

The complaint sets forth a cause of action to quiet plaintiff's title to forty-six blocks of land in Bates's Addition to the city of San Diego. Lyons answered averring that he was the owner in fee of an undivided one-half of the land described in the complaint. The finding was that the plaintiff was the owner in fee of the land and that Lyons had no right, title, or interest therein. It is claimed that this finding is contrary to the law and the evidence.

Bates's Addition was a subdivision of a tract of one hundred and sixty acres of land known as pueblo lot numbered 1786 on the map of the pueblo lands of the city of San Diego. On the first day of December, 1875, Henry B. Bates and the defendant Lyons were the owners in fee of pueblo lot 1786, each having an undivided one-half thereof. On December 9, 1875, Lyons signed, acknowledged, and delivered to Bates a deed purporting to convey to Bates an undivided one-half of said pueblo lot. This deed was duly recorded on the same day. The consideration expressed therein was one dollar. Thereafter Bates subdivided the pueblo lot into blocks, among which are those here in controversy. By a series of mesne conveyances the plaintiff has succeeded to all the title and interest of Bates in said blocks.

Lyons, at the time he made the deed to Bates of his undivided half interest in the pueblo lot, was a minor only a little over fourteen years of age. He then resided in San Diego and has ever since resided there. After his majority he went into the grocery business and has ever since been engaged in that business. On July 25, 1889, he filed in the

superior court of San Diego County his petition and sched-
ules asking to be adjudged an insolvent debtor, under the in-
solvent act of 1880 (Stats. 1880, p. 82). He declared therein
that he had no real property of any character. He never,
at any time, disaffirmed or offered or attempted to disaffirm
or repudiate the conveyance to Bates, except so far as he may
be deemed to have done so by the filing of his answer herein
on September 15, 1910. It thus appears that the title of the
plaintiff as the successor of Bates, depends upon the ques-
tion, whether or not, under the law, Lyons was required to
disaffirm his deed within a reasonable time after becoming of
age, in order to render it ineffectual and avoid the title of
the plaintiff. It is, of course, conceded that twenty-eight
years after minority would not be a reasonable time. This
question depends upon the meaning and effect of sections 33,
34, and 35 of the Civil Code as amended in 1874, [Stats. 1873–
74, p. 182]. They have remained unchanged since that time.
They read as follows:

"33. A minor cannot give a delegation of power, nor, under
the age of eighteen, make a contract relating to real property,
or any interest therein, or relating to any personal property
not in his immediate possession or control.

"34. A minor may make any other contract than as above
specified, in the same manner as an adult, subject only to his
power of disaffirmance under the provisions of this title, and
subject to the provisions of the titles on marriage, and on
master and servant.

"35. In all cases other than those specified in sections
thirty-six and thirty-seven, the contract of a minor, if made
whilst he is under the age of eighteen, may be disaffirmed by
the minor himself, either before his majority or within a
reasonable time afterwards; or, in case of his death within
that period, by his heirs or personal representatives; and if
the contract be made by the minor whilst he is over the age
of eighteen, it may be disaffirmed in like manner upon restor-
ing the consideration to the party from whom it was received,
or paying its equivalent."

These sections, as above stated, are the sections as amended
in 1874. Section 33, as originally enacted in the code of 1872,
was as follows: "A minor cannot give a delegation of power."
In determining the effect and intent of the section as amended

in 1874, this is significant. At common law there was some divergence in the cases upon the questions whether some classes of contracts of an infant were absolutely void and others voidable only, or whether all were merely voidable. In those cases where the contracts were only voidable, it was held to be necessary for the minor to disaffirm them within a reasonable time after coming of age; otherwise he would be bound by them. But where they were void absolutely, no disaffirmance was required and, obviously, such contracts could be entirely disregarded by the minor. There were a number of decisions laying down the positive rule that all contracts of infants purporting to constitute a delegation of power or authority to another to act for him were absolutely void, and not merely voidable. There were also many decisions to the contrary. (See monograph of Mr. Freeman on the subject in a note to *Craig* v. *Von Bebber,* 100 Mo. 584, [13 S. W. 906], in 18 Am. St. Rep., at page 629.) In *Hastings* v. *Dollarhide,* 24 Cal. 208, decided in 1864, this court held that the cases to the contrary were correct and that "an infant may execute a promissory note by agent." With this standing as the rule in this state, it is obvious that the intention of the legislature in framing section 33 of the Civil Code, was to change it and declare the rule that an infant could not execute contracts through an agent having only a delegated authority executed by the infant. This purpose is indicated by the fact that the authors of that code, in their annotated edition thereof, append to that section a note citing the cases which declare the rule that such delegation of power is absolutely void. It is to be presumed that in adopting this rule all its incidents as then established were adopted with it, and, consequently, that such contracts could be absolutely disregarded and that no disaffirmance was required in order to vacate them or prevent their binding force. It seems to be equally obvious that when the legislature, in amending the section in 1874, included other classes of contracts in the same category, declaring their invalidity by the use of the same words, it was intended that these contracts also should be deemed absolutely void, with no necessity to disaffirm them to avoid their apparent effect. It logically follows that the provisions of section 35 concerning the disaffirmance of contracts entered into by a minor whilst he is under eighteen are to be under-

stood as intended to refer solely to contracts other than those described in section 33, and that it was not the purpose thereby to make a disaffirmance necessary to avoid a contract of a minor under that age relating to real property, or to personal property not in his immediate possession or control, or delegating a power. This was the view taken by Mr. Freeman in the elaborate note on the subject above referred to. After stating that the contracts described in section 33 are made absolutely void thereby, while all other contracts of minors are merely voidable, and speaking of the provision of section 35 in their relation to section 33, he says on page 693: "So far as the foregoing section (35) speaks of contracts made under the age of eighteen, it must have reference only to the latter, and not to those which are absolutely void, since these cannot be disaffirmed, in the proper sense of the word." The deed of Lyons was therefore void from the beginning, it conveyed no interest in the land whatever, and no disaffirmance was necessary to enable him to assert and maintain his right thereto in any appropriate manner in a judicial proceeding or otherwise.

The plaintiff made no attempt to show title by adverse possession, but claimed solely by virtue of the deed to Bates in 1875.

It does not appear what was the result of the petition in insolvency filed by Lyons in 1889. No part of the record was introduced other than the petition and accompanying schedules. Whether it is still pending, or ended in the discharge of Lyons from his debts, or was dismissed without any adjudication, we cannot determine. For this reason we cannot apply the doctrine of *Rued* v. *Cooper,* 109 Cal. 687, [34 Pac. 98], that by reason of the adjudication in insolvency the title of the insolvent passes to the assignee.

As this deed was absolutely void, the doctrine of ratification has no application. The effect of a ratification is to prevent the party from afterward disaffirming the contract. This, of course, necessarily implies that but for the disaffirmance the contract would be binding. Where the contract is not binding in any event, but is utterly void from the beginning, no ratification can make it valid. There must be some act which is the equivalent of the execution of a new contract, or something which operates as an estoppel. (See

the discussion of Mr. Freeman on this subject in the monographic note above mentioned, 18 Am. St. Rep. at page 699; *Martin* v. *Zellerbach,* 38 Cal. 311, [99 Am. Dec. 365].)

The deed being wholly void, it cannot of its own force operate as an estoppel. Nor can the fact that it was duly recorded create an estoppel. An estoppel would not validate the void deed. (*Colby* v. *Title etc. Co.,* 160 Cal. 644, [Ann. Cas. 1913A, 515, 35 L. R. A. (N. S.) 813, 117 Pac. 913].) The evidence does not sustain the conclusion that Lyons was otherwise estopped to claim title to his half interest. It does not appear that the plaintiff, or any one under whom he claims, was led to purchase the property in reliance on the fact that Lyons had filed the petition in insolvency, or in reliance on any other act of Lyons, nor that any purchaser bought with knowledge of that petition, or of any act tending to show that Lyons had disclaimed any interest. The mere disclaimer set forth in the petition and schedules would not of itself divest his title, or create an estoppel against him in favor of one who had no knowledge of it. Lyons testified that at the time he signed the schedules he did not think he had any property of that character. He also denied having sold or conveyed the land and that he ever signed the deed. It was not shown that he had any knowledge of the existence of the deed, or of the record thereof, until a short time before the action was begun. It cannot be conclusively presumed that he recollected the making of a deed signed when he was only fourteen years old, even if it be true that he did in fact go through the form of executing it. Under these circumstances, there is no estoppel against him. The judgment for the plaintiff is unsupported by the evidence, so far as Lyons is concerned.

The judgment is reversed for a new trial.

Angellotti, J., and Sloss, J., concurred.