[Civ. No. 1629. First Appellate District.—March 27, 1916.]

FRANK W. FLITTNER, by Frank L. Trimble, His Guardian ad Litem, Respondent, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES (a Corporation), Appellant.

CONTRACTS—DISAFFIRMANCE BY MINOR—RESTORATION OF CONSIDERATION. A minor under the age of eighteen years may disaffirm a contract without restoring or offering to restore the consideration.

ID.—CONTRACT OF LIFE INSURANCE — DISAFFIRMANCE BY MINOR — LAW APPLICABLE.—A contract of life insurance entered into in this state

by a minor under the age of eighteen years is subject to the laws of this state in the matter of the right of such minor to disaffirm the contract and recover the premiums paid thereunder, and not subject to the laws of the state under which the company was organized and exists, notwithstanding the provision in the policy that the payment of the benefits and of the premiums should be at the home office of the company.

Id.—Interpretation of Life Insurance Contracts.—While the law of the place of performance of an insurance contract governs as to its construction and legal effect, as a general proposition the law of the place where the contract is made controls as to its execution and validity, including the capacity of the parties to make the contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Adolphus E. Graupner, Judge.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, and Almon E. Roth, for Appellant.

Louis H. Brownstone, for Respondent.

KERRIGAN, J.—This is an appeal by defendant from a judgment in favor of the plaintiff in an action in which the plaintiff, having disaffirmed a contract of insurance entered into by him with the defendant while a minor under the age of eighteen years, sought to recover the amount of premiums paid thereunder prior to the commencement of this suit.

On the eleventh day of February, 1910, the defendant, a corporation organized and existing under the laws of the state of New York, issued to the plaintiff, Frank W. Flittner, a policy of insurance insuring his life in favor of his mother for the sum of ten thousand dollars. At the time of the issuance of the policy the plaintiff was sixteen years old and resided in San Francisco, where the application for the insurance was made. After the usual medical examination, which was also had in San Francisco, the application was sent to the home office of the company in New York, where, upon its being found satisfactory, a policy was prepared and executed by the defendant, which then sent it to its general agent in San Francisco, and it was there delivered by such agent to the plaintiff, the latter at that time paying to the agent the first

annual premium. This payment was in pursuance of one of the provisions of the policy, which not only required that the first year's premium should be paid in advance, but also that the policy should not take effect until such premium had been paid during the good health of the assured.

The provisions of the policy in respect to payment of loss were as follows: "The Equitable Life Assurance Society of the United States agrees to pay at its home office in the City of New York Ten thousand dollars upon receipt of due proofs of the death of the insured, provided this policy is then in force and is then surrendered properly released to his mother Mary Flittner, beneficiary, with the right on the part of the insured to change the beneficiary."

With respect to the payment of premiums the policy provided as follows: "All premiums are payable in advance at said home office or to any agent or agency cashier of the society upon delivery, on or before their due date, of a receipt signed by an executive officer of the society, that is, the president, a vice-president, secretary, assistant secretary, comptroller, deputy comptroller, treasurer, or an assistant treasurer, and countersigned by said agent or agency cashier."

Horace C. Donnels, the agency cashier and traveling auditor of the defendant, also testified that upon policies issued to residents of San Francisco premiums are usually received and death benefits actually paid there. In case of receipts, he testified that they were prepared at the home office, but sent to and countersigned at San Francisco. The signatures of the officers upon such receipts being merely *facsimiles*. In the case of death benefits, the checks were prepared in New York, but usually forwarded to the agent in San Francisco and there delivered to the beneficiary.

Prior to the commencement of this action the plaintiff, by his attorney, wrote a letter to the defendant purporting to disaffirm the contract of insurance, and demanding the return of the premiums paid. The demand was based upon the ground that the plaintiff was a minor sixteen years of age at the time he entered into the contract of insurance, and hence under the law of this state was entitled to disaffirm it. The defendant denied this right on the part of the plaintiff, and refused to return the premiums paid, whereupon this action was brought by the plaintiff through his guardian *ad litem* to

recover said premiums, and to have a certain note canceled which he had given in payment of a further premium.

A minor under the age of eighteen years may disaffirm a contract without restoring or offering to restore the consideration. But the defendant claims that the contract of insurance in the case at bar was made by the parties under and subject to the laws of the state of New York, and that, as it was to be performed in that state, it was subject to its laws. The law of New York touching this subject reads: "In respect of insurance heretofore or hereafter by any person not of the full age of twenty-one years, but of the age of fifteen years or upwards, effected upon the life of such minor for the benefit of such minor, or for the benefit of the father, mother, husband, wife, brother or sister of such minor, the assured, by reason only of such minority, shall not be deemed incompetent to contract for such insurance or for the surrender of such insurance, or to give a valid discharge for any benefit accruing or for money payable under the contract."

The trial court in part found: "That said contract was delivered by the defendant in the city and county of San Francisco, State of California, and the first premium therefor was paid to the defendant in the city and county of San Francisco, State of California, and that said contract was not made under and by virtue of the laws of the State of New York and was never and is not now subject to or was it made in contemplation by the parties hereto of the laws of the State of New York, but on the contrary said policy was made in contemplation of the laws of the State of California, and was intended by both parties thereto to be delivered and performed in the city and county of San Francisco, State of California, and said contract was made in the said city and county of San Francisco, said state."

The court also found that the New York statute hereinabove referred to "does not apply to this case, and the plaintiff can rescind and disaffirm the" contract evidenced by the policy of insurance referred to "and recover the premiums paid thereon, and that the said contract is not now a valid and subsisting and binding contract of insurance between the parties thereto, with the same force and effect as if said contract or policy was entered into while said Frank W. Flittner was over the age of twenty-one years."

In this case, as intended by the parties, the plaintiff received the policy in California upon the payment by him of the first year's premium in advance. The last act, therefore, essential to the consummation of the contract of insurance was done in California; and it follows under the authorities that the contract was made in California. (Civ. Code, sec. 1626; *Equitable Life Ins. Co.* v. *Clements,* 140 U. S. 226, [35 L. Ed. 197, 11 Sup. Ct. Rep. 822] ; *California Sav. Bank* v. *American Surety Co.,* 87 Fed. 120; *Northwestern Mut. Life Ins. Co.* v. *McCue,* 223 U. S. 234, 245, [38 L. R. A. (N. S.) 57, 56 L. Ed. 419, 32 Sup. Ct. Rep. 220] ; 1 Cooley on Insurance, pp. 649 and 658.) The contract, therefore, would be governed by the laws of this state if it did not contemplate, as we think it does, that the place of performance shall be in New York.

The policy provided that the payment of the benefit should be at the home office of the defendant in New York; and as to the premiums, they, too, were to be paid at the home office. It is true that the policy also provided that they might be paid to any agent or agency cashier of the society upon delivery of a receipt signed by an executive officer thereof; but in this regard it is to be noted, as pointed out in the case of *Fidelity Mut. Life Ins. Co.* v. *Harris,* 94 Tex. 25, [86 Am. St. Rep. 813, 57 S. W. 635], that the policy nowhere provided that agents authorized to receive premiums should be appointed, or if appointed that they should be maintained in California or in any other place. Under the terms of the policy, then, if no agent or agency cashier of the defendant society were appointed or maintained in California, the premiums must of necessity have been paid in New York.

The rule that a contract made in one state to be performed in another is to be governed by the law of the state of performance is well established. The rule is well stated in the recent case of *Bartlett* v. *Collins,* 109 Wis. 477, 481, [83 Am. St. Rep. 928, 85 N. W. 703, 704], in which the court says: "As a general rule the construction and validity of a purely personal contract depends upon the law of the place where made (citing Story, Conflict of Laws). If, however, the contract is made in one place to be performed in another, then as a general rule the place of payment and performance is the place of contract (citing 2 Parsons on Contracts, 8th ed., p. 583). The rule is founded on the idea that in making

a contract to be performed in another state, the parties must have had that other state in mind.''

The rule is stated as follows, in the case of *Southern Express Co.* v. *Gibbs,* 155 Ala. 303, 309, [130 Am. St Rep. 24, 18 L. R. A. (N. S.) 874, 46 South. 465, at 467] : ''A contract, as to its nature, obligation and validity, is governed by the law of the state where made, unless it is performed in another state, in which case it will be governed by the law of the state of performance.    When it appears that the place of performance was different from the place of making the contract, it is to be construed according to the laws of the place where it is to be performed.''

In *Short* v. *Trabue,* 61 Ky. (4 Met.) 298, the court says: ''An agreement to perform an act at a particular place is presumed to be made with reference to the law of that place, and an agreement to perform an act without designating a place of performance is presumed to be made with reference to the law of the place at which the agreement is made.    These presumptions are conclusive. . . . The same rule applies to both parties to the contract.''

In the case of *Seiders* v. *Merchants' Life Assn.,* 93 Tex. 194, [54 S. W. 753], the supreme court of Texas passed upon the point here involved.    The defendant was incorporated under the laws of Missouri and had its principal place of business in the city of St. Louis in that state.    The plaintiff made application in the state of Texas, through an agent of the defendant, for a policy of insurance.    The policy was executed at the home office of the company and sent to its agent in Texas, and by him delivered to the plaintiff upon receipt of the first premium.    The contract provided that the loss, if any, should be payable at the home office of the company within thirty days after the receipt and approval by it of satisfactory proofs of the death of the plaintiff.    The court says: ''The question in this case is, Does the law of the State of Missouri apply to this contract?'' . . . Conceding that the contract of insurance was made in Texas, it is made payable in the home office in the State of Missouri, and all premiums are likewise made payable there.    It does not provide for any act to be done elsewhere by the company.    A tender of the money at the home office would have been valid.    Unless there be something in the circumstances that indicates that the parties contracted with reference to the law of Texas the

legal effect of the contract must be determined according to the laws of the State of Missouri.'' (See, also, *Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295, [100 Am. St. Rep. 73, 73 S. W. 102] ; *Fidelity Mutual Life Ins. Co.* v. *Harris,* 94 Tex. 25, [86 Am. St. Rep. 813, 57 S. W. 635] ; *Waverly Nat. Bank* v. *Hall,* 150 Pa. St. 466, [30 Am. St. Rep. 823, 24 Atl. 666].)

While the law of the place of the performance of the insurance contract governs as to its construction and legal effect, nevertheless, as a general proposition, the law of the place where the contract is made controls as to its execution and validity, including the capacity of the parties to make the contract.

All matters connected with the performance of a contract are regulated by the law of the place where the contract by its terms is to be performed. All matters bearing upon the execution, the interpretation, and the validity of contracts, including the capacity of the parties to contract, are determined by the law where the contract is made (*Union Nat. Bank* v. *Chapman,* 169 N. Y. 538, [88 Am. St. Rep. 614, 57 L. R. A. 513, 62 N. E. 672] ; *Phoenix Mut. Life Ins. Co.* v. *Simons,* 52 Mo. App. 357; 2 Wharton on Conflict of Laws, sec. 401; note in *Mayer* v. *Roche,* 26 L. R. A. (N. S.) 767; *Hauck Clo. Co.* v. *Sharpe,* 83 Mo. App. 385).

As a general proposition the capacity of parties to contract is to be determined by the law of the place where the contract is made (2 Elliott on Contracts, 1114 et seq.; *Union Trust Co. of N. J.* v. *Knabe,* 122 Md. 584, [89 Atl. 1107, 1115, 22 Am. & Eng. Ency. of Law, 1327, 1328] ; *Campbell* v. *Crampton,* 2 Fed. 417, 423; Story on Conflict of Laws, sec. 103; *Matthews* v. *Murchison,* 17 Fed. 760, 768). Matters that relate to the preliminary question whether a contract has been made are in general governed by a fixed law, which is independent of and cannot be varied by the intention of the parties. Such matters include the capacity of the parties to contract, conditions or restrictions upon the right to contract, and the formal validity of the contract. The governing law, on the other hand, with respect to the obligation of the contract, is, as a general proposition, dependent upon the intention of the parties, expressed or presumed (2 Wharton on Conflict of Laws, sec. 427e, p. 900).

If the plaintiff, being a minor, had given a delegation of power, his act in that regard would have been void; so would his contract relating to real property if he were at the time

of its execution under the age of eighteen (Civ. Code, sec. 34); and in either of those instances the case would fall squarely within the rule declared in the authorities just cited. In the case at bar while the contract of the plaintiff was not void, nevertheless he did not on account of infancy have the power at the time of its execution to enter into an absolutely binding contract. The contract at that time was potentially void, the law of the place of its execution having placed it within the power of one of the parties thereto to annul it by the mere announcement of his will and pleasure. When that announcement was made the contract was in no better condition than if it had been void *ab initio.* " 'It is the prerogative,' so the rule has been well stated in Mississippi, 'of the sovereignty of every country to define the condition of its members, not merely its resident inhabitants, but others temporarily there, as to capacity and incapacity. But capacity or incapacity, as to acts done in a foreign country, where the person may be temporarily, will be recognized as valid or not in the forum of his domicile, as they may infringe or not its interests, laws and policies.' " (1 Wharton on Conflict of Laws, p. 232.) If, then, the capacity of a person domiciled in California, with relation to an act to be performed outside its boundaries, when examined in the forum of his domicile, will be tested as to its validity by the law of that forum, *a fortiori* will it be so in the case of a contract actually entered into within its jurisdiction although to be performed beyond its territorial boundaries?

The law in its wisdom shields minors from their lack of judgment and experience, and vests in them under certain conditions the right to disaffirm their contracts. That right the plaintiff in this case invoked, and he was thereupon entitled to recover the premiums theretofore paid by him. This position may seem, under all the circumstances of the case, to be a hardship on the defendant, but "the right of an infant to avoid his contracts is one conferred by law for his protection against his own improvidence and the designs of others; and though its exercise is not infrequently the occasion of injury to those who have in good faith dealt with him, this is a consequence which they might have avoided by declining to enter into the contract. It is the policy of the law to discourage adults from contracting with infants, and the former cannot complain if, as a consequence of their violation of this rule of conduct, they are injured by the exercise of the right with

which the law has purposely invested the latter, nor charge that the infant in exercising the right is guilty of fraud.''

The judgment and order are affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 25, 1916.