[Civ. No. 6549.   Third Dist.   Dec. 9, 1941.]

NETTIE F. MERRY, Appellant, v. H. GARIBALDI et al.,
Respondents.

J. M. Inman and E. R. Vaughn for Appellant.

Hinsdale, Otis, Johnson & Ware and Elliott, Atkinson & Sitton for Respondents.

TUTTLE, J.—This action was brought to cancel a deed of trust and promissory note, and to quiet title to a certain parcel of real property in the city of Sacramento, upon the ground that the signature of plaintiff, appearing upon said instruments, was a forgery. The answer of defendants sets up laches and estoppel as defenses. Upon a trial by the court, findings were entered in favor of defendants upon all issues. Judgment was entered denying any relief. The appeal is from the judgment.

The facts are undisputed. The plaintiff is a widow, and resided upon the premises in question with her daughter and son-in-law, Gordon A. Lilly. Shortly before September 30, 1937, Lilly went to Omer E. Cheek, a realtor, and stated that plaintiff desired a loan upon said property. On the date mentioned Lilly delivered to Cheek a deed of trust and promissory note, each purporting to bear the signature of plaintiff. The matter was escrowed through Capital City Title Company, who delivered to Lilly a check for $1420.80 in favor of plaintiff. That check was presented to the bank

by Lilly, bearing the purported endorsement of plaintiff, and the amount thereof was paid by the bank to Lilly. All of the signatures of plaintiff were admittedly forgeries perpetrated by Lilly. Prior to the consummation of the transaction, defendants H. Garibaldi and Rose Garibaldi had entrusted to Cheek the sum of $1500 which they wished to loan, and this is the money which was paid over by the title company to Lilly. Defendants Cheek and Henderson were trustees under said trust deed, and the Garibaldis were beneficiaries thereunder.

All went well until some time during July or August of 1938. Up to that time Lilly had paid the interest due on said note, and his mother-in-law was blissfully ignorant that her home had been incumbered. During either of said months—plaintiff was not sure which one—Cheek called at the home and encountered plaintiff. He informed her that interest on her loan was overdue. This was the first knowledge she had received of the fraud which had been committed by her son-in-law. Upon requesting an explanation from him, he admitted the forgery, but agreed to pay the interest and said he would begin to pay off the loan as soon as possible. The following testimony of plaintiff explains the understanding between her and Lilly:

"Q. In other words, to protect your family you agreed that if he would pay the interest you would say nothing about it; is that correct? A. Yes, sir. Q. And from the time, then, of your first intimation that there was a loan on this property,—when I say this property, I mean the Swanston Park property,—you agreed to do nothing and say nothing, and you never conveyed that information to anyone, did you? A. No, we were ashamed of it, we kept it quiet."

The Garibaldis knew nothing of the fraud until they were served with the summons and complaint in this action.

The trial court made the following findings:

"That said note and deed of trust were not, in fact, executed by said plaintiff, but her name was forged thereon, and said instruments were delivered, by Gordon A. Lilly, plaintiff's son-in-law; that after such fraudulent execution and delivery, said plaintiff learned for the first time during the month of July or August, 1938, of the existence of said note and deed of trust, and of such forgery; that at all times thereafter up to the time of the filing of this action, plain-

tiff remained silent and refrained from informing said defendants or their agents of the facts and circumstances surrounding the execution and delivery of said note and deed of trust; that plaintiff at all times, and particularly when notices were received by her, both written and by telephone, to the effect that interest installments under said note were delinquent, conducted herself in a manner calculated to prevent, and which did prevent said defendants from learning the true facts and circumstances surrounding the execution and delivery of said note and deed of trust, and said plaintiff acted in a manner calculated to cause said defendants, and which in fact did cause said defendants, to continue to believe that said note and deed of trust were lawfully executed and delivered by said plaintiff; that said defendants were without knowledge of the true facts and circumstances surrounding the execution and delivery of said note and deed of trust, and consequently failed, to their detriment, to commence any actions or proceedings against said Gordon A. Lilly; that in this connection, the sum of $1500.00, which was loaned by the defendants H. Garibaldi and Rose Garibaldi, his wife, and which was the consideration for said note and deed of trust, was disbursed by the escrow agent for said lenders by check made payable to said plaintiff; that the endorsement of said plaintiff was likewise forged on said check by said Gordon A. Lilly, who received the proceeds therefrom; that the bank, on which said check was drawn, honored said check with the forged endorsement thereon on October 1, 1937; that said bank, until the running of the statute of limitations on the 1st day of October, 1938, was subject to a suit by said escrow agent, or by said lenders as principals, for wrongfully honoring said check; that the defendants H. Garibaldi and Rose Garibaldi, his wife, were deprived of the benefit of seeking reimbursement from said bank, which was a substantial detriment, because of the aforesaid acts and conduct of plaintiff.

''That said plaintiff is estopped from denying the validity of said note and deed of trust and from urging any infirmity in connection with the execution and delivery thereof, and has been guilty of laches in the commencement of this action; that plaintiff should be denied the relief prayed for in said complaint.''

We think the findings are sufficient to support the judgment. When plaintiff first learned of the forgery, it was her duty to give the facts to the Garibaldis without delay. Her agreement to conceal the crime and condone it places her in little better position than the forger himself, so far as her attack upon the legality of the transaction is concerned.

In 10 Cal. Jur., pages 515–516, sec. 55, it is stated: "A commonplace maxim of equity, which has also escaped certification, is that which declares that he who comes into equity must come with clean hands. This maxim says 'that whenever a party, who as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere in his behalf, to acknowledge his right, or to award him any remedy.' "

Furthermore, the failure of plaintiff to notify defendants of the fraud promptly, constitutes laches which will bar recovery. When defendants finally received notice of the contumacious act of Lilly, the statute of limitations had run against any action which they might bring against the bank for cashing the forged check. Thus, through the delay in receiving notice, defendants were deprived of any right to recoup. On page 526, same volume, section 64, it is said:

"There is no artificial or hard-and-fast rule either as to the lapse of time or the circumstances which will justify the application of the doctrine of laches. The question must be determined by a consideration of all the facts and circumstances of the particular case. Laches is a question of fact, on the evidence, and each case becomes largely a law unto itself. In other words, the matter is one which reposes in the sound discretion of the chancellor."

The finding of estoppel is also sustained by the evidence. In 10 Cal. Jur., page 631, sec. 16, it is stated: "An estoppel may arise also from silence as well as from words or conduct. But this is only where there is a duty to speak, and where the party upon whom such duty rests, has an opportunity to speak, and, knowing that the circumstances require him to speak, remains silent."

■ It is the contention of appellant that defendants are not entitled to set up the defenses mentioned, because the check was not their own, but that of the escrowee. The answer must be that the title company was the agent of the Garibaldis for the purpose of handing over the proceeds of the loan to Lilly. Defendants could therefore have brought an action against the bank within the year provided by the statute.

■ Appellant contends that a forged instrument carries no title, and that the defense of equitable estoppel cannot be invoked by an innocent purchaser. She relies upon the case of *Gioscio* v. *Lautenschlager,* 23 Cal. App. (2d) 616 [73 Pac. (2d) 1230]. The court there held that the evidence was not sufficient to estop the grantor of a forged deed from asserting its invalidity. The court went on to say that equitable estoppel did not apply to a forged deed. The latter holding was not necessary to the decision. It was held in the case of *Blaisdell* v. *Leach,* 101 Cal. 405 [35 Pac. 1019, 40 Am. St. Rep. 65], that ''the owner of property cannot be divested thereof by a forged instrument, but his conduct in reference to the instrument may estop him from denying its validity.'' In the case of *Dool* v. *First National Bank of Calexico,* 209 Cal. 717 [290 Pac. 15], Dool executed a note and deed of trust at a time when he was entirely without understanding. Such instruments were therefore void. Subsequently, Dool regained his understanding, and allowed and induced the bank from whom he had borrowed the money to lay out and expend money under said trust deed. Dool died, and the executors of his estate brought this action to cancel the said instruments upon the ground that they were void, having been executed when Dool was entirely without understanding and of unsound mind. The bank set up estoppel as a defense, and the judgment of the trial court upholding that defense was affirmed. The pertinent portion of the opinion reads as follows:

''The above recital of facts in this case seems clearly to call into action this rule of law. But it may be said that inasmuch as the contract when made was absolutely void, neither ratification nor estoppel could be invoked. This is doubtless true of contracts that are void because prohibited by law or void because of violation of rules of public

policy. *Lukens* v. *Nye*, 156 Cal. 498, 505 [20 Ann. Cas. 158, 36 L. R. A. (N. S.) 244, 105 Pac. 593], and *Colby* v. *Title Ins. etc. Co.*, 160 Cal. 632, 644 [Ann. Cas. 1913A, 515, 35 L. R. A. (N. S.) 813, 117 Pac. 913], involve contracts of this type. But where the object to be attained is a lawful one and the party is under no disability (*sui juris*), no reason exists why his previous disability should arrest the law of estoppel. This, in fact, has been in principle held by this court respecting the contracts of minors under the age of eighteen years. Such contracts are void but the minor may, after attaining his majority, so deport himself as to be estopped to plead his minority as a defense to the contract entered into while under the age of eighteen years. *Hakes Inv. Co.* v. *Lyons*, 166 Cal. 557, 561 [137 Pac. 911], where it is stated that while ratification will not apply, estoppel may. To the same effect is *Lee* v. *Hibernian Savings etc. Soc.*, 177 Cal. 656, 659 [171 Pac. 677]."

We are therefore of the opinion that estoppel was a proper defense in the action before us.

Concluding the discussion, the Garibaldis were entirely innocent throughout the entire episode. They advanced the money in good faith. On the other hand, plaintiff agreed to conceal the commission of the felony, and to permit Lilly to work the situation out. In good conscience, it was the imperative duty of plaintiff to speak out. Her silence deprived defendants of an opportunity to recoup from the bank before the expiration of the statute of limitations. Equity and justice should not compel defendants to bear the loss.

The judgment is affirmed.

Thompson, Acting P. J., concurred.