[L. A. No. 20038. In Bank. Nov. 14, 1947.]

CLARA KUHRTS BURNAND, Respondent, v. JUAN J. IRIGOYEN et al., Defendants and Appellants; MARIE ANTOINETTE IRIGOYEN, a Minor, etc., Cross-Complainant and Appellant.

Saul Ruskin and Harold Epstein for Appellants.

Albert W. Leeds for Respondent.

SHENK, J.—The plaintiff, Clara Kuhrts Burnand, commenced an action to quiet title to a parcel of land in Los Angeles. The action grew out of a defaulted conditional contract of purchase of real and personal property executed by Juan J. Irigoyen and Marie Antoinette Irigoyen, minors, and others. Marie Antoinette Irigoyen filed a cross-complaint, based on her disaffirmance of the contract, whereby she sought recovery of payments made on the purchase price. The complaint filed by the plaintiff was dismissed by consent, and the trial proceeded on the issues framed by the cross-complaint and answer thereto. At the close of the evidence introduced on behalf of the cross-complainant, the cross-defendant (referred to herein as plaintiff) moved for judgment. The motion was granted and judgment was entered in her favor. The cross-complainant (herein referred to as defendant) appealed from the judgment.

In 1925, Ana Maria Irigoyen, a widow, and her two minor children, Juan J. Irigoyen and Marie Antoinette Irigoyen, came to California from Mexico City. In 1926, the widow, who had inherited some $40,000 in cash from her late husband, married Norman Rankow, and thus became Ana Maria Rankow. In 1933, the paternal grandfather of the children died in Mexico, leaving some property in or near Mexico City in which the children shared an interest. On September 7, 1937, a conditional contract of sale of a residence and furnishings located in Los Angeles was entered into between the plaintiff and her husband (since deceased) as sellers, and "Juan J. Irigoyen, Marie Antoinette Irigoyen, and Ana Maria Rankow as Guardian of the Persons and Estates of Juan J. Irigoyen and Marie Antoinette Irigoyen, Buyers," for a purchase price of $33,500. On August 7, 1937, $300 of the purchase money had been paid to the sellers as rent for one month. The balance was to be paid in monthly installments of varying amounts until January 7, 1940, when the

sum of $12,000 became due; then in installments of $150 on the seventh day of each month until the full purchase price was paid; with interest at 6 per cent on deferred payments. On the date of the contract, Juan J. and Marie Antoinette were respectively 19 and 17 years of age. Contemporaneously with the execution of the conditional sales contract, the sellers entered into a "Supplemental Contract" with Norman Rankow and Ana Maria Rankow, as buyers, whereby the latter became personally and primarily liable as principals, jointly and severally with Juan J. and Marie Antoinette Irigoyen, and Ana Maria Rankow as their guardian, to fulfill the terms and conditions of the conditional contract of sale including payment to the seller of the moneys becoming due thereunder. Ana Maria Rankow was not the legally appointed guardian of the persons and estates of the minors, and there was no court proceeding or approval of the contract.

The mother, stepfather, and the two children entered the premises at the time of the execution of the contracts, and thereafter occupied them until June, 1941. Defaults occurred in the buyers' performance of their obligations from the inception of the contracts. Payments were made by the Rankows but not in accordance with the contracts and never in sufficient sums to bring the contracts to good standing. (*Burnand* v. *Irigoyen*, 56 Cal.App.2d 624, 625 [133 P.2d 3].) The mother and son, after the latter attained his majority, executed a note for $4,000 to cover the sums in default. Thereafter, pursuant to Mexican judicial approval and decree of emancipation of the defendant, then over 18, properties in Mexico in which the children owned an interest were sold, and proceeds of the sale to the amount of $5,979 were, about June, 1940, paid in Mexico to one Enciso as agent of the plaintiff. This sum was applied by the plaintiff first to the satisfaction of the $4,000 note, and the balance to other arrearages.

After the commencement of an action in ejectment, and in June, 1941, the family surrendered possession. They had occupied the premises as a home for a period of three years and nine months. The history of prior litigation between the parties, including an action in unlawful detainer, a suit on the promissory note for $4,000, a suit for damages to the house and furniture, in addition to the action in ejectment, is set forth in *Burnand* v. *Irigoyen, supra* (56 Cal.App.2d 624).

In that case a judgment for the defendants based on a plea in abatement was reversed.

The only issues tried herein were those tendered by the cross-complaint. The trial court found that possession of the real property and furnishings was given to Norman and Ana Maria Rankow, and that the premises were occupied by them and the children for the period stated; that the defendant did not pay to the plaintiff any sums on account of the purchase price mentioned in the contract, and that any portion of the sum of $5,979 remitted to the plaintiff by Enciso and claimed as having originated from properties in Mexico in which ownership was shared by the minors was paid after the defendant had attained the age of 18 and had been duly emancipated pursuant to Mexican law; also, that the property was necessary for the support of the defendant and her brother as a home and shelter, and that the parents were unable to and did not provide for the defendant from their own funds. The court concluded that the defendant was not entitled to recover anything paid under the contracts.

The trial court made no specific finding as to the age of the defendant at the time of the execution of the contracts, when admittedly she was 17. The defendant contends that the omission is material to her rights, and that its inclusion must result in a reversal with directions to enter judgment in her favor on the cross-complaint.

A contract relating to real property or any interest therein, or personal property not in his immediate possession or control, entered into by a minor under 18 years is void and requires no act of disaffirmance. (Civ. Code, § 33; *Hakes Investment Co.* v. *Lyons,* 166 Cal. 557 [137 P. 911].)

Section 34 of the Civil Code permits other contracts by minors, but subject to their power of disaffirmance. By section 35 disaffirmance of a contract made by a minor under 18 must occur either before reaching majority or within a reasonable time thereafter. That section also provides that restoration must accompany disaffirmance of a contract made by a minor when over 18 years; but restoration is not a requirement upon disaffirmance of a contract made when the minor was under that age. (*Hakes Investment Co.* v. *Lyons, supra,* 166 Cal. at p. 559; *Cummings* v. *Strobridge Land Syndicate,* 150 Cal. 209 [88 P. 901, 119 Am.St.Rep. 189]; *Tracy*

v. *Gaudin,* 104 Cal.App. 158, 160 [285 P. 720] *Maier* v. *Harbor Center Land Co.,* 41 Cal.App. 79 [182 P. 345].)

Section 36 of the Civil Code provides that a minor cannot disaffirm a contract, otherwise valid, to pay the reasonable value of things necessary for his support, or that of his family, entered into by him when not under the care of a parent or guardian able to provide for him, provided that such necessaries have actually been furnished to him or to his family.

Restoration to the plaintiff of the real and personal property purportedly purchased by the minors under the conditional sale contracts involved in this case is not the crux of the matter. The incidents of termination of the contracts and restoration of the property to the plaintiff resulted from the defaults of the buyers. The defendant's notice of disaffirmance, also found by the court to have been given, if deemed essential, could serve only as a basis for recovery from the plaintiff of amounts claimed by the defendant to have been paid by her under the contracts.

█ Upon disaffirmance the minor is entitled to recover all benefits paid under the contract, and, as noted, where the minor was under 18, restoration of benefits received is not required. █ One deals with infants at his peril. (*Pollock* v. *Industrial Acc. Com.,* 5 Cal.2d 205, 211 [54 P.2d 695], and cases cited.) The right of the infant to avoid his contracts is one conferred by law for his protection against his own improvidence and the designs of others. The policy of the law is to discourage adults from contracting with an infant and they cannot complain if as a consequence of violating the rule they are injured by the exercise of the right of disaffirmance vested in the infant. (*Flittner* v. *Equitable Life Assurance Soc.,* 30 Cal.App. 209, 216 [157 P. 630].)

If it were established in this case as in other cases, such as *Maier* v. *Harbor Center Land Co., supra* (41 Cal.App. 79), that the transaction was with the minors the problem might be simplified. In the last-cited case a judgment cancelling a contract for the purchase of a lot of land made by the plaintiff when under 18 years of age and for the return of moneys paid thereunder was affirmed. █ In the present case the parents were principals in the transaction. All of the negotiations and dealings were with them. Possession of the premises and property was given to them, and the payments under the contracts were made by them. It was incumbent

upon the defendant to show that she made payments under the contract executed by her before she could recover. On the record this proof failed. Documentary evidence introduced by the defendant showed that the initial and subsequent payments were made by the parents. It may therefore be said that the judgment is supported by the finding that no dealings were had with the defendant and no payments made by her.

■ However, the court made further findings to the effect that if a portion of the moneys paid under the contract could be traced to proceeds from the sale of properties in Mexico in which the children owned an interest, the acts of the defendant in this respect occurred at a time when she had attained the age of capacity, and created an estoppel to avoid an implied agreement of liability for the rental value of the premises during occupancy. In *Maier* v. *Harbor Center Land Co., supra* (41 Cal.App. at p. 81) it was said that the mere payments of installments after the minor reached the age of 18 did not remake the old contract or make a new one for *the purchase of the property*, and hence did not amount to an estoppel to assert the invalidity of the contract of purchase. Here the estoppel found by the court does not relate to the contract of purchase. The plaintiff is not seeking to enforce that contract. As the trial court viewed it the acts of the defendant after her incapacity had been removed operated to estop a disaffirmance of an implied agreement to pay a reasonable rental for the occupancy of the home.

■ The law implies an obligation on the part of an infant to pay for necessaries furnished to him and his family on his own credit, where not otherwise prohibited (43 C.J.S. p. 187, and cases cited; Civ. Code, § 36). ■ Lodging has been included as a necessary, and if shelter or lodging be furnished an infant under such circumstances that a promise to pay therefor is implied he will be liable for the reasonable value, unless statutory prohibitions apply. (*Hayward* v. *Montero*, 13 Ohio App. 414; *Ragan* v. *Williams*, 220 Ala. 590 [127 So. 190, 68 A.L.R. 1182, 1185] and cases cited; 43 C.J.S. p. 190; 27 Am.Jur. pp. 758, 761, and cases cited. ■ The policy of the law of this state to protect minors against their own improvidence does not extend to depriving others of the reasonable value of necessaries furnished minors having capacity to contract for them, since the law recognizes that

minors must have their needs provided for. (Civ. Code, §36.) The trial court also found in effect on sufficient evidence introduced by the defendant that the parents of the minors were unable to provide shelter and that the home which they occupied and the reasonable rental value thereof were necessary for the support of the minors. ██ There is no invalidity inherent in the contract of a minor to pay for necessaries actually furnished to him whether that contract be express or implied. (*Aubel* v. *Sosso*, 72 Cal.App. 57, 60 [236 P. 319].) ██ Estoppel to disaffirm such a contract, assuming original invalidity due to nonage (Civ. Code, §33), may be created by acts done after the disability of nonage was removed, in this case after the minor arrived at the age of 18. (*Hakes Investment Co.* v. *Lyons, supra*, 166 Cal. 557, 561; *Lee* v. *Hibernia Savings & Loan Soc.*, 177 Cal. 656, 660 [171 P. 677]; *Dool* v. *First National Bank of Calexico*, 209 Cal. 717, 725 [290 P. 15]; *Dool* v. *First National Bank of Calexico*, 107 Cal.App. 585, 589 [290 P. 478]; *Merry* v. *Garibaldi*, 48 Cal.App.2d 397, 403 [119 P.2d 768].) The record further shows that the rental value of the property exceeded the amounts paid under the contracts. There is no showing that a home of the class occupied by the members of the family was not in accord with their station and requirements, or that the amounts paid to the plaintiff did not represent the reasonable rental value for the period of occupancy.

██ The defendant attempted to show that the parents were unable to buy the home and therefore that the contract was that of the minors. She asserts that the joining of the parents as principals on the contract was a ruse adopted by the plaintiff to cover up a void contract, and the plaintiff urges that the evidence supports the trial court's conclusion that the contract was in reality with the parents, who for some purpose of their own desired it also to be in the names of the minors. Whether such a device was employed by the parties in this case was for the trial court to determine. The court on sufficient evidence found against the defendant on this issue. Assuming the inclusion of an appropriate finding of the defendant's age, the record supports the findings which in turn support the judgment.

The judgment is affirmed.

Gibson, C. J., Carter, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—I cannot agree with the conclusion that the findings and judgment are supported by the evidence, nor with the holding that "the acts of the defendant after her incapacity had been removed operated to stop a disaffirmance of an implied agreement to pay a reasonable rental for the occupancy of the home." The seller's asserted right to retain money which she had received on account of the purchase price of the real property was not placed upon the ground of consideration for an implied contract, and, in my opinion, the findings have no evidentiary support whatever.

As a defense to the cause of action for recovery of the amount paid by Miss Irigoyen during minority, Mrs. Burnand asserted that she had furnished necessaries to an infant, and also justified acceptance of payments made before Miss Irigoyen was 21 years of age upon the ground that the minor had been emancipated by the Mexican decree. The seller neither pleaded nor proved facts which would constitute an implied contract, and the case was not tried upon that theory.

Although Miss Irigoyen obtained an emancipation decree in Mexico and judicial approval to sell the property owned by her in that country, those determinations did not validate a contract made by her in California which was void under the laws of this state because of her minority. (*Deason* v. *Jones*, 7 Cal.App.2d 482 [45 P.2d 1025]; *Beauchamp* v. *Bertig*, 90 Ark. 351 [119 S.W. 75, 23 L.R.A.N.S. 659].) A contract relating to real property situated in California must be construed according to its laws. (Civ. Code, § 755; *Pickering Lumber Corp.* v. *Whiteside*, 54 Cal.App.2d 200, 210, 128P.2d 899]; *Launer* v. *Griffen*, 60 Cal.App.2d 659, 668 [141 P.2d 236]; *Taylor* v. *Taylor*, 192 Cal. 71, 76 [218 P.756, 51 A.L.R. 1047].) There is no evidence whatever, other than the Mexican decree, as to emancipation or loss of status as a minor in California, and all of the acts of Miss Irigoyen relied upon to support the judgment against her occurred in this state while she was under the age of 21 and had the status of an infant.

The finding as to the amounts received by Mrs. Burnand upon the purchase price of the property declares ". . . that during the year 1940, the sum of approximately $5,979.00 was paid to cross-defendant by Guillermo A. Enciso, cross-defendant's agent. That the source of such payments by Enciso has not been proved by any evidence introduced in this cause; . . ." But the infant's uncontradicted testimony was

to the effect that a substantial part of this amount came from the property which she and her brother inherited in Mexico. This testimony is in exact accordance with the allegations made by Mrs. Burnand in one of her separate defenses to Miss Irigoyen's cross-complaint. The facts pleaded are that the payments required by the contract were in default; Mrs. Burnand then went to the city of Mexico to inspect the properties owned by the Irigoyen family; and a contract was there made to which one Enciso, Mrs. Burnand's agent, was a party, providing that Miss Irigoyen should obtain a decree of emancipation and authorization to sell her interest in the property inherited by her from her grandfather and apply the proceeds to the Burnand indebtedness. The answer further declares that the necessary decrees were obtained, the property sold and $5,979 paid to Enciso, as Mrs. Burnand's agent, and credited by her on the purchase price of the California property.

Furthermore, Miss Irigoyen testified that she and her brother received an income of between $150 and $200 a month from property in Mexico which they had inherited from their grandfather, and which they shared equally. She also testified that after the purchase of the Burnand property, this income "went to pay for the house," and that the down payment of $300 was made from funds belonging to her brother and herself equally. These statements stand uncontradicted. And although the trial judge may have disbelieved the testimony of Miss Irigoyen, the finding that "it is not true that under and in pursuance of said contract . . . the cross complainant paid to the cross defendant on account of the purchase price . . . any sum whatsoever," is directly contrary to the facts pleaded by Mrs. Burnand and her own admission as to payment made in the verified answer to the cross-complaint. It is also inconsistent with the allegation of Mrs. Burnand that Miss Irigoyen's mother "was unable to provide from her own resources, support or maintenance for said cross-complainant."

No finding was made as to the age of Miss Irigoyen when the contract was executed, although there is uncontradicted testimony showing that she was under 18 at that time. Moreover, Mrs. Burnand herself pleaded that Miss Irigoyen was under 18 at the time the contract was made. One of the exhibits made a part of the answer of Mrs. Burnand to the cross-

complaint is a certified copy of the birth certificate of Miss Irigoyen showing that she was born on June 11, 1920. The cross-complainant is, therefore, entitled to a finding upon the evidence submitted by the cross-defendant, as well as her own uncontradicted testimony, that on September 7, 1937, the date when she executed the conditional sales contract for the purchase of the real and personal property, she was a minor under 18 years of age. (Cal. Const., art. VI, § 4¾; Code Civ. Proc., § 956a.)

For these reasons I would reverse the judgment.

Traynor, J., concurred.

Appellants' petition for a rehearing was denied December 11, 1947. Edmonds, J., and Traynor, J., voted for a rehearing.